

## COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

**NO. 2-08-303-CV**


MIKE NORGAARD, LPC AND                                        APPELLANTS
RIVERBEND BEHAVIORIAL
HEALTHCARE ASSOCIATES, P.A.


V.


CHERYL LOCKE PINGEL                                            APPELLEE

------------

FROM THE 342ND DISTRICT COURT OF TARRANT COUNTY

------------

## OPINION

------------

Appellants Mike Norgaard, LPC and Riverbend Behavioral Healthcare

Associates, P.A. appeal from the trial court's denial of their motion to dismiss

Appellee Cheryl Locke Pingel's claims against them.  Because we hold that

Pingel was required to provide an expert report in compliance with section

74.351 of the Texas Civil Practice and Remedies Code,[1] we reverse.

------------

[1] Tex. Civ. Prac. & Rem. Code Ann. § 74.351 (Vernon Supp. 2008).

Norgaard is a licensed professional counselor ("LPC"). Riverbend is a professional association of licensed professional counselors that employs Norgaard.

On July 30, 2005, Pingel went to Harris Methodist Southwest Hospital ("the hospital") complaining of abdominal pain and vomiting. While at the hospital, she also complained of a loss of control and jerking movements of her right arm and leg. She was ultimately discharged with medication for her abdominal symptoms after the examining doctor determined that her abdominal symptoms were "of uncertain etiology."

On August 4, 2005, Pingel returned to the hospital complaining that her symptoms had worsened and that she had developed headaches and was having trouble speaking and expressing her thoughts. A doctor examined her and ordered several tests. As part of Pingel's examination, Norgaard performed a consultation, conducting a psychiatric and chemical dependency screening of her. This screening included evaluating her memory and speech. The examining doctor, Dr. Cochrum, ultimately assessed her condition as a "neurological spell" of unknown origin and sent Pingel home.

Pingel subsequently filed suit against Norgaard and Riverbend, as well as various hospital doctors and nurses, after she experienced a stroke and suffered brain damage. Norgaard and Riverbend filed a motion to dismiss when Pingel

2

did not serve them with an expert report within the statutory deadline provided by section 74.351. The trial court denied the motion, and Norgaard and Riverbend brought this appeal.[2]

We review for abuse of discretion a trial court's denial of a motion to dismiss under section 74.351.[3] To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, we must decide whether the act was arbitrary or unreasonable.[4]

In their sole issue, Norgaard and Riverbend argue that the trial court abused its discretion by denying their motion to dismiss because they are health care providers, and therefore Pingel was required to serve an expert report as to both Norgaard and Riverbend. Section 74.351 requires a plaintiff asserting a health care liability claim to serve on each party one or more expert reports for each physician or health care provider against whom the plaintiff has

---

[2] *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(9) (Vernon 2008), § 74.351(b).

[3] *Moore v. Gatica*, 269 S.W.3d 134, 139 (Tex. App.—Fort Worth 2008, pet. denied).

[4] *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985), *cert. denied*, 476 U.S. 1159 (1986).

asserted a claim.[5] If, as to a defendant physician or health care provider, no expert report is served within 120 days after the plaintiff filed her original petition, the defendant may move to dismiss the plaintiff's claim; the trial court must grant this motion.[6]

A health care liability claim is a claim "against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant."[7] The term "health care provider" includes "any person, partnership, professional association, corporation, facility, or institution duly licensed, certified, registered, or chartered by the State of Texas to provide health care."[8]

In her petition, Pingel does not appear to question that she is asserting a health care liability claim. Her petition begins by stating that "[t]his is a medical malpractice action" and that she is seeking to recover damages "arising from the Defendants' medical, nursing, and health care diagnosis, assessment, care

---

[5] Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a).

[6] *Id.* § 74.351(b).

[7] *Id.* § 74.001(13) (Vernon 2005).

[8] *Id.* § 74.001(12)(A).

and treatment of her conditions." Norgaard and Riverbend were included in her use of the term "Defendants."

In her specific claims against Norgaard, Pingel alleges that Norgaard was "negligent in the [LPC] diagnosis, assessment, care and treatment of [Pingel] in that Norgaard failed to meet the reasonable, prudent, and accepted standards of [LPC] and/or health care applicable to him." She alleges that as an LPC, he failed to provide timely, proper, and adequate "diagnosis and assessment" of her "illnesses, injuries, and/or conditions." She further alleges that he failed to provide adequate LPC "and/or health care assessment, testing, evaluation, care and/or therapy for her illnesses, injuries, and/or conditions."

As for Riverbend, Pingel alleges that it was negligent in the "medical and/or health care diagnosis, assessment, care and treatment" of her. She asserted that it was vicariously liable for the acts of its employees or agents for a failure to meet standards of "health care." She also asserts that Riverbend was directly liable in connection with her diagnosis, assessment, testing, evaluation, care, and treatment.

And, finally, Pingel acknowledges that Norgaard evaluated Pingel after Dr. Cochrum ordered a consultation, specifically, a "psychiatric and chemical dependency screening evaluation and assessment," and that Norgaard conducted that screening using a "Psychiatric and Chemical Dependency

5

Screening and Referral Form."  At the hearing on the motion to dismiss, Pingel's attorney stated that Norgaard "should have recognized that [Pingel] was having some underlying problems that he could not deal with, and she needed to be re-evaluated further by the medical doctors."  The acts of Norgaard in assessing and evaluating Pingel were clearly an inseparable part of the rendition of medical services to Pingel on August 4, 2005.  Thus, Pingel's claims based on Norgaard's acts or omissions in conducting the screening are health care liability claims.[9]

Despite the language used in her petition, Pingel asserts that Norgaard is not a health care provider and therefore no expert report was necessary.  As explained below, however, an LPC fits within the statute's definition of a "health care provider."

The term "health care provider" is defined in section 74.001 of the civil practice and remedies code.[10]  The definitions in that section are somewhat circular in that "health care provider" is essentially defined as one licensed to

_____

[9] *See Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 848 (Tex. 2005) ("A cause of action alleges a departure from accepted standards of medical care or health care if the act or omission complained of is an inseparable part of the rendition of medical services."); *Harris Methodist Fort Worth v. Ollie*, 270 S.W.3d 720, 723 (Tex. App.—Fort Worth 2008, pet. filed) ("If the act or omission alleged in the complaint is an inseparable part of the rendition of health care services, then the claim is a health care liability claim.").

[10] Tex. Civ. Prac. & Rem. Code Ann. § 74.001(12)(A).

provide "health care,"[11] and "health care" is defined as an act or treatment performed by a "health care provider" during a patient's medical care.[12] Section 74.001(12)(B)(ii) states that the term "health care provider" includes "an employee, independent contractor, or agent of a health care provider or physician acting in the course and scope of the employment or contractual relationship."[13] But neither party addressed and the record does not establish Norgaard's relationship with the hospital or Dr. Cochrum, so we cannot determine if Norgaard fits within that part of the definition.[14] Turning to the another part of the definition, we find some guidance from the inclusion of the words "licensed, certified, or registered or chartered . . . to provide health care" in the definition of "health care provider."[15]

---

[11] *Id.*

[12] *Id.* § 74.001(10).

[13] *Id.* § 74.001(12)(B)(ii).

[14] *See Brown v. Villegas*, 202 S.W.3d 803, 806 (Tex. App.—San Antonio 2006, no pet.) (holding that laboratory could not rely on status as independent contractor to a doctor to qualify as a health care provider when record did not contain any evidence establishing an independent contractor relationship).

[15] *Id.*

The State of Texas requires LPCs to be licensed.[16] By statute, the practice of an LPC includes the planning, implementing, and evaluation of treatment plans using "counseling treatment interventions" that include counseling, assessment, and consulting.[17] The term "counseling treatment intervention" expressly "does not permit or include the diagnosis or treatment of a physical condition or disorder."[18] The term "assessment" expressly does not permit "the diagnosis of a physical condition or disorder."[19] Thus, an LPC may not diagnose or treat a *physical* condition or disorder. But the term "counseling treatment intervention" does include "the assessment, evaluation, and treatment of a person with a *mental*, *emotional*, or *behavioral* disorder."[20] And the statute expressly provides that an LPC's practice may include the prevention, assessment, evaluation, and treatment of "mental, emotional, or behavioral disorders and associated distresses that interfere with mental

---

[16] Tex. Occ. Code Ann. § 503.301 (Vernon 2004).

[17] *Id.* § 503.003(a) (Vernon 2004).

[18] *Id.* § 503.003(b)(4).

[19] *Id.* § 503.003(b)(1).

[20] *Id.* § 503.003(b)(4)(C) (emphasis added).

8

health."[21] Thus, an LPC may evaluate and treat a mental, emotional, or behavioral, but not physical, disorder.[22]

Health care includes the care of mental conditions.[23] Because LPCs are licensed to treat mental or emotional conditions that interfere with mental health, and are therefore licensed to provide health care, LPCs are health care providers under the statute.[24] Because Pingel's suit involves an LPC acting in his capacity as a health care provider, specifically in his psychiatric and chemical dependency assessment and evaluation of her,[25] Pingel was required

---

[21]▲ *Id.* § 503.003(a)(2).

[22]▲ *Id.* § 503.003(b)(4)(C).

[23]▲ *See id.* § 151.002 (13) (Vernon Supp. 2008) (defining "practicing medicine" to include "the diagnosis, treatment, or offer to treat a *mental or physical* disease or disorder") (emphasis added); Tex. Health & Safety Code Ann. § 166.002(7) (Vernon Supp. 2008) (regulating advance directives and defining "health care or treatment decision" as "consent, refusal to consent, or withdrawal of consent to health care, treatment, service, or a procedure to maintain, diagnose, or treat an individual's physical or mental condition"); *Diversicare*, 185 S.W.3d at 850 (noting that health care staff make judgments about the care, treatment, and protection of patients "based on the *mental and physical* care the patients require") (emphasis added).

[24]▲ *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.001(10).

[25]▲ *See* Tex. Occ. Code Ann. § 503.003(a)(2) (including within the definition of "practice of professional counseling" the assessment and evaluation of "mental, emotional, or behavioral disorders and associated distresses that interfere with mental health").

to provide an expert report as to Norgaard.[26]  Because she failed to do so, the trial court abused its discretion by failing to grant Norgaard's motion to dismiss.[27]

We recognize that the Austin Court of Appeals has held that an LPC is not a "health care provider."[28]  But that case arose under the predecessor statute to section 74.351, and that statute applied only to the professions specifically named in the statute as "health care provider[s]."[29]  Under the current version of the statute, the list of professions expressly included in the definition of "health care provider" is nonexclusive.[30]  Accordingly, *Grace* is inapplicable here.

As for Riverbend, Pingel's claims allege that it was both directly and vicariously liable for its negligence in the "medical and/or health care" diagnosis,

---

[26] *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b).

[27] *See id*.

[28] *Grace v. Colorito*, 4 S.W.3d 765, 769 (Tex. App.—Austin 1999, pet. denied).

[29] *See id.*

[30] *See Christus Health v. Beal*, 240 S.W.3d 282, 286 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *Skloss v. Perez*, No. 01-08-00484-CV, 2009 WL 40438, at *6 (Tex. App.—Houston [1st Dist.] Jan 8, 2009, no pet.) (mem. op.) (concluding that LPC defendant was a health care provider).

assessment, and treatment of her.  With respect to her vicarious liability claims, Pingel alleges that Riverbend is liable for the acts of its "shareholder(s), director(s), or officer(s) or employee(s) or agent(s) or servant(s)" acting in the course and scope of their "applicable capacities."  Norgaard was the only person associated with Riverbend specifically named by Pingel.  But because the claims against Norgaard should have been dismissed for failure to file an expert report, any claim holding Riverbend vicariously liable for Norgaard's actions should have been dismissed as well.[31]

As for her direct liability claims, those claims, too, required an expert report.  A professional association fits within the definition of a health care provider.[32]  In this case, Pingel alleges that Riverbend is a professional

---

[31] *Compare In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 463–64 (Tex. 2008) (stating that vicarious liability claim against hospital based on doctor's acting as agent of hospital was viable only if doctor was negligent, and thus the claim had to be supported by an expert report), *with Univ. of Tex. Sw. Med. Ctr. v. Dale*, 188 S.W.3d 877, 879 (Tex. App.—Dallas 2006, no pet.) (holding that expert report is sufficient as to hospital if it is sufficient as to resident physicians because plaintiff's claims sought to hold hospital vicariously liable for actions of resident physicians).

[32] *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.001(12)(A) (providing that term "health care provider" includes "any . . . professional association . . . registered . . . to provide health care"); *see also* Tex. Rev. Civ. Stat. art. 1528f, §2(B)(2), (3) (authorizing the formation of a professional association by physicians and by "[p]rofessionals, other than physicians, engaged in related mental health fields such as psychology, clinical social work, licensed professional counseling, and licensed marriage and family therapy"); Tex. Bus. Orgs. Code Ann. § 301.003(2)A) (Vernon 2008) (defining "professional

association of LPCs, and LPCs are licensed mental health professionals.[33] LPCs are health care providers, and therefore Riverbend is a health care provider.[34] Furthermore, Pingel has asserted health care liability claims against Riverbend by alleging that it "failed to timely, properly, safely, or adequately govern or supervise the quality of medical and health care services to and for" Pingel and that it departed from "reasonable, prudent and accepted standards of licensed professional counselors' professional association care and/or health care" in its "diagnosis, assessment, testing, evaluation, care and treatment of [Pingel's] illnesses, injuries, and/or conditions."[35] Pingel therefore was required to provide an expert report for any direct liability claims asserted against Riverbend.[36] Because she did not do so, the trial court abused its discretion by denying Riverbend's motion to dismiss.[37]

---

association" as an association formed to provide the services of "a doctor of medicine, doctor of osteopathy, doctor of podiatry, dentist, chiropractor, optometrist, therapeutic optometrist, veterinarian, or licensed mental health professional").

[33] *See* Tex. Occ. Code Ann §§ 503.001, 503.301.

[34] *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.001(12)(A).

[35] *See id.* § 74.001(10).

[36] *Id.* § 74.351(a); *see also Ctr. For Neurological Disorders, P.A. v. George*, 261 S.W.3d 285, 294 (Tex. App.—Fort Worth 2008, pet. denied).

[37] Tex. Civ. Prac. & Rem. Code Ann § 74.351(b).

12

Pingel argues in her brief that the trial court properly denied the motion to dismiss because section 74.351 violates her rights under both the United States Constitution and the Texas Constitution. She fails to make any argument as to why this statute is unconstitutional and cites no authority in support. Accordingly, we overrule her argument as inadequately briefed.[38] We sustain Norgaard and Riverbend's sole isssue.

Having sustained Norgaard and Riverbend's issue, we reverse the trial court's determination that no expert report was required. However, because this case involves a matter of first impression in this court as well as an unsettled area of law, we remand this case in the interest of justice for the trial court to allow Pingel to file an expert report.[39]

LEE ANN DAUPHINOT
JUSTICE

PANEL: CAYCE, C.J.; DAUPHINOT and WALKER, JJ.

---

[38] *See* Tex. R. App. P. 38.1(i).

[39] *See* Tex. Civ. Prac. & Rem. Code Ann § 74.351(a); Tex. R. App. P. 43.3; *In re Doe*, 19 S.W.3d 249, 257 (Tex. 2000) (remanding in the interest of justice when case involved matter of first impression); *Scott Bader, Inc. v. Sandstone Prods., Inc.*, 248 S.W.3d 802, 822 (Tex. App.—Houston [1st Dist.] 2008, no pet.) ("Appellate courts have broad discretion to remand for a new trial in the interest of justice.").

13

WALKER, J. concurs without opinion.

DELIVERED:  August 31, 2009