



## OPINION

No. 04-10-00292-CV

Ida Lou **BUCHANAN**, Individually
and as Representative of the Estate of Wilbur Buchanan, Deceased,
Appellant

v.

Dr. William **O'DONNELL**; Dr. Robert R. Murray, Jr.;
and Hill Country Imaging Associates, P.A.,
Appellees

From the 216th Judicial District Court, Gillespie County, Texas
Trial Court No. 11574
Honorable Frank Andrews, Judge Presiding[1]

Opinion by:    Sandee Bryan Marion, Justice

Sitting:    Sandee Bryan Marion, Justice
Rebecca Simmons, Justice
Marialyn Barnard, Justice

Delivered and Filed:  February 23, 2011

AFFIRMED

Appellant, Ida Lou Buchanan, Individually and as Representative of the Estate of Wilbur

Buchanan, Deceased, appeals from the trial court's order dismissing her claims against appellees,

Dr. William O'Donnell, Dr. Robert R. Murray, Jr., and Hill Country Imaging Associates, P.A.

(HCIA), and awarding appellees attorneys' fees.  We affirm.

---

[1] The Honorable N. Keith Williams is the presiding judge of the 216th Judicial District Court of Gillespie County. However, the Honorable Frank Andrews, retired judge of the 116th Judicial District Court of Dallas County, presided over the proceedings and signed the order at issue in this appeal.

**BACKGROUND**

Appellant and her husband Wilbur were delivering newspapers when Kristy Dawn Anders rear-ended their vehicle with her own. As a result of the collision, appellant sustained serious injuries and Wilbur died.

Anders, a nurse, was on her way to work at Hill Country Memorial Hospital (HCMH) in Fredericksburg when she rear-ended appellant and Wilbur. Appellant sued Anders for negligently failing to exercise ordinary care in the operation of her vehicle. During discovery, appellant came to believe Anders may have been under the influence of negligently or illegally prescribed medications at the time of the collision, which may have contributed to the accident. Appellant alleges the medications were prescribed by Anders's primary care physician, Dr. William O'Donnell; and/or by her boyfriend, Dr. Joseph Pruneda, an associate of HCIA (a physicians' group); and/or by Dr. Robert R. Murray, Jr., another HCIA associate. Pruneda rented the vehicle Anders was driving at the time of the collision, but he was not a passenger.

Appellant subsequently amended her petition, bringing the following claims against the parties listed:

1. Negligence: Anders, Pruneda, O'Donnell, Murray, HCIA, and HCMH;

2. Negligence Per Se: Anders, Pruneda, O'Donnell, Murray, HCIA, and HCMH;

3. Negligent Entrustment: Pruneda and HCMH;

4. Negligent Hiring, Supervision, Training, and Retention: HCMH and HCIA;

5. *Respondeat Superior*: HCMH and HCIA; and

6. Participatory Liability: Pruneda, O'Donnell, Murray, HCIA, and HCMH.

Arguing the claims against them were health care liability claims under Texas Civil Practice and Remedies Code Chapter 74, O'Donnell, Murray, HCIA, and Pruneda moved for

dismissal and severance based on appellant's failure to timely serve expert reports. As to O'Donnell, Murray, and HCIA only, the trial court granted the motions to dismiss with prejudice, awarded attorneys' fees, and ordered severance. The trial court also dismissed the claims against Pruneda for negligence, negligence per se, and participatory liability but did not sever them from the negligent entrustment claim, to which he is still a party. Now, appellant appeals the trial court's order dismissing her claims against O'Donnell, Murray, and HCIA only.[2]

## NATURE OF APPELLANT'S CLAIMS

Appellant argues the trial court erred by dismissing her claims against appellees because they are not health care liability claims subject to Chapter 74's expert report requirement.

### Standard of Review

Generally, we review a trial court's order granting a motion to dismiss for failure to timely file expert reports under an abuse of discretion standard. *See*, *e.g.*, *Am. Transitions Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001) (applying abuse of discretion standard in review of trial court's decision to dismiss under predecessor statute). However, when the case requires us to determine whether Chapter 74 applies to a claim, a question of law, we apply a *de novo* standard of review. *Holguin v. Laredo Reg'l Med. Ctr., L.P.*, 256 S.W.3d 349, 352 (Tex. App.—San Antonio 2008, no pet.); *NCED Mental Health, Inc. v. Kidd*, 214 S.W.3d 28, 32 (Tex. App.—El Paso 2006, no pet.).

### Substantive Law

Chapter 74 requires a claimant to serve on each party or each party's attorney one or more expert reports for each physician or health care provider against whom a claim is asserted.

---

[2] The record is unclear as to the status of appellant's claims against HCMH.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (West 2005). Upon the affected physician's or health care provider's motion, the trial court is required to dismiss the claim with prejudice and award reasonable attorneys' fees and costs if an expert report is not served within 120 days of filing suit. *Id.* § 74.351(b). The expert report requirement only applies to health care liability claims. *See id.* § 74.351(a).

In determining whether a claim is a health care liability claim, we look to its nature and essence, rather than the way it was pleaded. *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 847 (Tex. 2005). If a claim's factual allegations are related to and inseparable from rendition of medical treatment, it is a health care liability claim. *Id.* at 848. An important factor in determining whether an act or omission is an inseparable part of providing medical care is whether expert testimony from a medical or health care professional is necessary to prove the claim. *Id.* at 851.

Texas courts generally characterize claims as health care liability claims if they implicate standards of medical care. *E.g.*, *id.* at 850 (patient's claim for assault by another patient was health care liability claim because supervision of patients was part of health care); *Wilson N. Jones Mem'l Hosp. v. Ammons*, 266 S.W.3d 51, 64 (Tex. App.—Dallas 2008, pet. denied) (hospital visitor's claim for injuries caused by unrestrained mental patient was health care liability claim because how and where to hold mental patient pending transfer was a health care decision); *Holguin*, 256 S.W.3d at 356 (patient's claim against hospital for sexual assault by hospital employee was health care liability claim because proper staffing and supervision of employees was part of patient health care); *Ruiz v. Walgreen Co.*, 79 S.W.3d 235, 239 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (patient's claim against pharmacy for dispensing wrong medication was health care liability claim because claim derived from pharmacy's

professional duty of dispensing medications). However, courts will not characterize a claim as a health care liability claim if the health care provider's conduct went beyond the reasonable rendition of medical care. *E.g.*, *Holguin*, 256 S.W.3d at 354 (patient's claim against hospital employee for sexual assault was not health care liability claim because sexual assault was not part of rendition of medical care).

Here, appellant brought claims against all three appellees for negligence, negligence per se, and participatory liability. Appellant also claims HCIA is liable under the doctrine of *respondeat superior* for Murray's alleged negligence, as well as for negligent hiring, supervision, training, and retention. We conclude each of these claims, discussed in turn, is a health care liability claim.

### Negligence

Appellant claims appellees were negligent in the following ways:

A. Improperly, illegally, and unnecessarily dispensing prescription drugs and/or narcotics to [Anders];

B. Failing to properly supervise [Anders's] taking of her prescribed medications;

C. Failing to properly assess and/or prevent [Anders] from obtaining multiple prescriptions from multiple sources;

D. Failing to warn [Anders] of the dangers of driving while using and/or overusing the prescribed medications and failing to warn [Anders] of the dangers of overuse of prescribed medications and/or the dangers of taking a mixture or cocktail of medications/drugs; [and]

E. Failing to prevent [Anders] from over-prescribing potentially dangerous drugs and/or overusing potentially dangerous drugs.

Essentially, the crux of appellant's claim is appellees were negligent in their treatment of Anders by improperly or unnecessarily prescribing her medications, as well as in their failure to treat Anders by failing to supervise her use of those medications and by failing to warn her of the dangers of overuse. Expert testimony would be required to establish the proper standard of care for prescribing medications, as well as to determine whether appellees unnecessarily prescribed

or over-prescribed medications to Anders.  Expert testimony would also be required to establish the proper standard of care for supervising patients' use of prescribed medications, as well as to determine whether appellees were negligent in their supervision of or failure to supervise Anders's use of the medications.  Therefore, the facts alleged in appellant's petition are inseparable from appellees' rendering of (or failure to render) medical care.  For these reasons, we conclude appellant's negligence claim is a health care liability claim.  Because appellant's negligence claim is a health care liability claim and no expert report was served, the claim was properly dismissed.

### Negligence Per Se

Appellant claims appellees violated their statutory obligation to properly prescribe medications.  Although her petition does not expressly name a statute, appellant claims this statutory obligation includes proper dispensing of narcotic medications to individuals who are actual patients in need of such medications, as well as proper monitoring of the actual dispensing of such medications.  On appeal, appellant contends the violation of appellees' statutory obligations constitutes negligence per se, not a health care liability claim.

We are not bound by appellant's characterization of her claim in determining whether it is a health care liability claim.  *Diversicare*, 185 S.W.3d at 847.  In fact, at least two of our sister courts have concluded a claim for negligence per se may be a health care liability claim if it implicates standards of medical care.  *Tex. Cypress Creek Hosp., L.P. v. Hickman*, No. 14-10-00149-CV, 2010 WL 4880705, at \*5 (Tex. App.—Houston [1st Dist.] Dec. 2, 2010) (plaintiff's factual allegations necessarily established health care liability claim because they were directed to defendant health care provider's failure to adhere to statutorily prescribed standards of care); *Dunn v. Clairmont Tyler, L.P.*, 271 S.W.3d 867, 872 (Tex. App.—Tyler 2008, no pet.)

(plaintiff's claim for negligence per se was health care liability claim because nursing homes' statutory duty to report employee's misconduct "implicates their duty as health care providers").

Here, the factual allegations underlying appellant's negligence per se claim implicate the standards of care for prescribing medications and supervising patient use of those medications. Resolution of the claim will likely require expert testimony to establish whether appellees' conduct breached the standards of care, even if those standards are statutory, as appellant claims they are. Because the merits of appellant's negligence per se claim necessarily implicate standards of medical care, we conclude it is a health care liability claim. Because appellant's negligence per se claim is a health care liability claim and no expert report was served, the claim was properly dismissed.

*Participatory Liability*

Appellant's petition charges appellees with participatory liability for appellant's and Wilbur's injuries: "[Appellees] knew that [Anders's] conduct of continuing to take a cocktail of dangerous drugs and narcotics constituted a tort or wrongful/illegal act. With the intent to assist [Anders] in the wrongful/illegal acts, [appellees] substantially assisted [Anders] by unnecessarily prescribing a cocktail of dangerous drugs . . . ." Because this claim is premised on whether appellees "unnecessarily" prescribed medications, it implicates applicable standards of medical care and will likely require expert testimony to establish when prescriptions are necessary and whether they were necessary for Anders. Therefore, we conclude appellant's participatory liability claim is also a health care liability claim, and, because no expert report was filed, it was properly dismissed.

**Respondeat Superior *and Negligent Hiring, Supervision, Training, and Retention***

Appellant alleges HCIA is liable under the doctrine of *respondeat superior* for Murray's alleged negligence, as well as for negligent hiring, supervision, training, and retention. Appellant's petition states: "[HCIA] breached the duty to hire, supervise, train and retain competent employees when [it] hired, supervised, trained and retained . . . Murray, [a radiologist who was] unnecessarily prescribing drugs and narcotics to [Anders]." In *Holguin*, we held a claim for *respondeat superior* was "nothing more than a recasting" of a claim for negligent hiring, supervision, training, and retention. *Holguin*, 256 S.W.3d at 354. Here, we conclude appellant's *respondeat superior* claim is also a recasting of her negligent hiring, supervision, training, and retention claim; thus, we need only determine whether the latter claim is a health care liability claim.

In *Rose*, the Texas Supreme Court determined a negligent hiring, supervision, training, and retention claim was a health care liability claim because it was based on the defendant-hospital's negligent credentialing of a physician-employee. *Garland Cmty. Hosp. v. Rose*, 156 S.W.3d 541, 546 (Tex. 2004). According to the Court, "[t]he quality of a health care provider's medical staff is intimately connected with patient care." *Id.* at 545. The Court held that because doctor credentialing is necessary to ensure quality of care, it is an inseparable part of the rendition of health care. *Id.*

Here, the essence of appellant's negligent hiring, supervision, training, and retention claim is that HCIA was negligent because it failed to prevent Murray from "unnecessarily" prescribing medications to Anders. We believe whether Murray "unnecessarily" prescribed medications implicates the quality of health care he provided. Therefore, HCIA's supervision of its physician-employee, like doctor credentialing in *Rose*, was necessary to ensure quality of

care. Therefore, HCIA's hiring, supervision, training, and retention of Murray was an inseparable part of the rendition of health care. For these reasons, we hold appellant's negligent hiring, supervision, training, and retention claim is a health care liability claim, and, because no expert report was served, it was properly dismissed.

## EQUITABLE ESTOPPEL

In her second issue, appellant contends that if the dismissed claims are health care liability claims, appellees are equitably estopped from arguing for dismissal under Chapter 74's expert report requirement because O'Donnell initially argued the claims were not health care liability claims and because appellees failed to timely provide her with Anders's medical records. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.051(d) (West 2005) ("All parties shall be entitled to obtain complete and unaltered copies of the patient's medical records from any other party within 45 days from the date of receipt of a written request for such records . . . ."). In support of her contention, appellant cites O'Donnell's plea in abatement, in which he argued appellant did not have standing to pursue a health care liability claim because neither appellant nor Wilbur were his patients. Appellant argues that by subsequently moving for dismissal based on appellant's failure to serve him with an expert report, O'Donnell inequitably changed his position. Appellant also argues that by requesting dismissal after refusing to timely provide Anders's medical records, O'Donnell, Murray, and HCIA all inequitably changed position.

"[E]quitable estoppel is based on the principal that 'one who by his conduct has induced another to act in a particular manner should not be permitted to adopt an inconsistent position and thereby cause loss or injury to the other.'" *City of Fredericksburg v. Bopp*, 126 S.W.3d 218, 221 (Tex. App.—San Antonio 2003, no pet.) (quoting *Maguire Oil Co. v. City of Houston*, 69 S.W.3d 350, 367 (Tex. App.—Texarkana 2002, pet. denied)). In *Smalling*, the plaintiff argued

the defendants were estopped from requesting dismissal of her claims based on her failure to file expert reports because they initially denied the existence of a physician-patient relationship. *Smalling v. Gardner*, 203 S.W.3d 354, 368 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). In that case, the plaintiff's obstetricians denied a physician-patient relationship existed between them and the plaintiff's baby, who died shortly after birth. *Id.* The Houston Court of Appeals held the defendants' discovery responses and deposition testimony denying the physician-patient relationship were not, on their own, so inconsistent with an intent to assert the right to dismissal under Chapter 74 as to estop them from asserting that right, especially because they consistently invoked the protection of Chapter 74 in their answers. *Id.* at 369 (citing *Jernigan v. Langley*, 111 S.W.3d 153, 157 (Tex. 2003) ("[T]o establish an intent to waive the right to dismissal . . . the defendant's silence or inaction must be inconsistent with the intent to rely upon the right to dismissal.")).

Here, like the doctors in *Smalling*, O'Donnell initially argued appellant had no standing to bring a health care liability claim against him. However, we believe there are two reasons O'Donnell was not estopped from subsequently seeking dismissal under Chapter 74. First, whether non-patients have standing to pursue health care liability claims under amended Chapter 74 is still an unsettled issue.[3] Thus, it was well within reason for O'Donnell to file a plea in abatement alleging lack of standing. Second, O'Donnell, like Murray and HCIA, consistently invoked the protection of Chapter 74 in his original answer and in later motions. Therefore, we

---

[3] Chapter 74's predecessor statute, former article 4590i, defined a health care liability claim as a "patient's claim," whereas Chapter 74 replaces "patient" with "claimant." TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13) (West 2005). The Dallas Court of Appeals concluded removal of the word "patient" from the definition of "health care liability claim" demonstrates the Legislature's intent to permit claims relating to the injury or death of non-patients. *Wilson*, 266 S.W.3d at 61. However, as the Dallas court acknowledged, "no [other] reported case addresses whether an injured non-patient can constitute a claimant under [C]hapter 74." *Id.* at 60.

conclude O'Donnell did not act so inconsistently that he is estopped from seeking dismissal for appellant's failure to timely serve him with an expert report.

As to the production of Anders's medical records, appellant concedes O'Donnell did produce his records. Murray and HCIA were both consistent in their contention that they had no records to produce because Murray never treated Anders. Even if Murray did treat Anders, it was appellant's responsibility to seek, obtain, and provide an authorization from Anders for release of her protected health information. TEX. CIV. PRAC. & REM. CODE ANN. § 74.051(a) (West 2005). Nothing in the record indicates appellant delivered to Murray or HCIA any authorization from Anders for release of her medical records. Although appellant filed two motions to compel Anders to produce her medical records, the record does not indicate the trial court ruled on the motions. Appellant also filed a motion to compel all defendants, including Murray and HCIA, to respond to all outstanding requests for discovery, but the record does not indicate the trial court ruled on that motion either. Therefore, nothing in the record supports appellant's contention that Murray or HCIA "refused" to turn over Anders's medical records. Accordingly, we conclude appellant's equitable estoppel argument is without merit.

## CONSTITUTIONALITY OF SECTION 74.351

In her third issue, appellant argues section 74.351(a), which requires timely filing of expert reports, is unconstitutional as applied to her due to its lack of "equity-based provisions." According to appellant, it was impossible for her to comply with section 74.351 because appellees "refused" to produce Anders's medical records. Therefore, appellant argues, Chapter 74 makes a remedy by due course of law contingent upon an impossible condition, which is a violation of the "open courts" provision of the Texas Constitution. *See* TEX. CONST. art. I, § 13 ("All courts shall be open, and every person for an injury done him, in his lands, goods, person

or reputation, shall have remedy by due course of law."); *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 355 (Tex. 1990) ("[T]he 'open courts' provision[] is premised upon the rationale that the legislature has no power to make a remedy by due course of law contingent upon an impossible condition."). "A claimant who brings an open courts challenge [to Chapter 74] has the burden of showing that the expert-report requirements actually prevented him from pursuing his claims." *Herrera v. Seton Nw. Hosp.*, 212 S.W.3d 452, 461 (Tex. App.—Austin 2006, no pet.).

As discussed above, O'Donnell did produce Anders's medical records, and nothing in the record supports appellant's contention that Murray and HCIA "refused" to produce Anders's medical records. Accordingly, appellant has not met her burden of demonstrating that Chapter 74's expert report requirement actually prevented her from pursuing her claims. Therefore, we conclude her constitutional argument is without merit.

## ATTORNEYS' FEES

In her final issue, appellant argues appellees' alleged refusal to provide medical records makes the trial court's award of attorneys' fees "inappropriate" in this case. According to appellant, her failure to obtain an expert report was due to appellees' noncompliance with their statutory obligation to turn over Anders's medical records. She argues she should not be sanctioned for appellees' misconduct. Appellant also contends the award of attorneys' fees to HCIA is "particularly inappropriate" because HCIA's attorneys' fees have not been properly segregated from those expended on behalf of Pruneda.[4]

---

[4] The same law firm represented both HCIA and Pruneda. The trial court dismissed but did not sever the health care liability claims brought against Pruneda, and he remains a party to appellant's non-health care liability claims.

*Award in General*

Chapter 74 provides that if an expert report has not been timely served, the court, on motion of the affected health care provider, shall award the health care provider reasonable attorneys' fees. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b)(1) (West 2005). The attorneys' fees awarded must be both "reasonable" and actually "incurred." *Id.* Like dismissal for failure to file expert reports, the award of attorneys' fees is not discretionary. *Id.* § 74.351(b).

In a recent opinion, the Texas Supreme Court stated: "Although we can imagine a case in which discovery sanctions might offset an award of fees and costs under section 74.351(b), this is not such a case because the trial court has made no finding of discovery abuse." *Garcia v. Gomez*, 319 S.W.3d 638, 643 (Tex. 2010). In *Garcia*, the plaintiff argued the physician waived his right to recover attorneys' fees because he was slow to produce medical records and ultimately failed to produce records critical to the plaintiff's case. *Id.* However, the physician maintained that he produced all records in his possession, and the parties eventually discovered the critical records were never under the physician's control. *Id.* Because the plaintiff could not establish abuse of the discovery process, the Court held she was liable for the full amount of the physician's reasonable and incurred attorneys' fees. *Id.*

Similarly, here, because appellant did not obtain rulings on any motions to compel production of the medical records, the trial court made no findings of discovery abuse. Also, appellant concedes O'Donnell turned over all records in his possession, and nothing in the record supports appellant's contention that HCIA or Murray refused to produce records in their possession, if they had any. Appellant does not argue the amount of the award is unreasonable or was not actually incurred, nor does she cite any legal authority supporting her contention that the amount awarded is in any way inappropriate.

*Award to HCIA*

The trial court's order on appellees' motion to dismiss reads as follows:

| | |
|---|---|
| Hill Country Imaging Associates, P.A. | $18,500.00 |
| (these are the same fees for Dr. Pruneda) | |
| Dr. William O'Donnell | $21,035.76 |
| Dr. Robert R. Murray, Jr. | $17,429.83 |

On appeal, appellant argues the award to HCIA's and Pruneda's attorneys should have been segregated between the two parties. Appellant explains in her brief: "Logically, the work and time involved in defending [HCIA and Pruneda] was the same and to hold that [appellant is] responsible for each and ever[y] dollar incurred would be tantamount to double-dipping and is unreasonable and unconscionable."

First, we note appellant made no objection to the trial court regarding segregation of the fees. Regardless, "[a] recognized exception to this duty to segregate arises when the attorney's fees rendered are in connection with claims arising out of the same transaction and are so interrelated that their 'prosecution or defense entails proof or denial of essentially the same facts.'" *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 11 (Tex. 1991) (quoting *Flint & Assoc. v. Intercontinental Pipe & Steel, Inc.*, 739 S.W.2d 622, 624–25 (Tex. App.—Dallas 1987, writ denied)); *see also Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313–14 (Tex. 2006) ("[I]t is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated.").

Here, the trial court heard the testimony of HCIA's and Pruneda's attorney and also reviewed her firm's billing records. Appellant's trial counsel had the opportunity to cross-examine HCIA's and Pruneda's attorney at length regarding her testimony that "[t]he total amount of the bill is $18,500 for the representation of two defendants in a case with multiple issues." There is nothing in the record to suggest the award of $18,500.00 does not represent the

amount incurred for both parties "in connection with claims arising out of the same transaction[, which] are so interrelated that their 'prosecution or defense entails proof or denial of essentially the same facts.'" *See Stewart Title*, 822 S.W.2d at 11. There is also nothing in the record indicating the award is unreasonable or that appellant may be double-billed when the order dismissing her claims against Pruneda becomes final. Finally, appellant does not contradict HCIA's and Pruneda's attorney's testimony that her firm's work on behalf of both parties justifies the $18,500.00 award. Based on the above, we conclude the trial court did not err in failing to segregate the award. *See id*. Accordingly, we overrule appellant's final issue.

## CONCLUSION

Based on the above, we affirm the trial court's judgment in all respects.

Sandee Bryan Marion, Justice