**AFFIRMED; and Opinion Filed January 22, 2015**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-01161-CV

**ZENE TINNARD, Appellant**

**V.**

**THE DALLAS COUNTY HOSPITAL DISTRICT D/B/A PARKLAND HEALTH & HOSPITAL SYSTEM, AND UNIVERSITY OF TEXAS SOUTHWEST AND UNKNOWN GOVERNMENTAL ENTITIES (DOES 1-5), Appellee**

**On Appeal from the 101st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-12-14290**

## MEMORANDUM OPINION
Before Justices Bridges, Lang, and Evans
Opinion by Justice Lang

Zene Tinnard ("Tinnard") appeals from the trial court's order dismissing his claims against the Dallas County Hospital District d/b/a Parkland Health & Hospital System ("Parkland") and the University of Texas Southwestern at Dallas ("UT Southwestern") (collectively, "the appellees") for failing to serve a medical expert report pursuant to section 74.351(b) of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b) (West 2011).

In two issues, Tinnard contends the trial court erred when it dismissed his claims pursuant to the Texas Medical Liability Act ("TMLA") because (1) the determination of sovereign immunity under the Texas Tort Claims Act "must be made as a preliminary matter," and (2) he did not file a "health care liability claim." We decide against Tinnard on both issues.

We conclude Tinnard has not rebutted the presumption that his claims based on an alleged "error in medical judgment and decision-making" are health care liability claims. Accordingly, we affirm the trial court's order dismissing Tinnard's claims for failure to file an expert report pursuant to section 74.351(b) of the Civil Practices and Remedies Code.

## I. FACTUAL AND PROCEDURAL BACKGROUND

From approximately July through December 2011, Tinnard was treated at Parkland Hospital for gouty arthritis of his left wrist. On or about December 7, 2011, Tinnard was allegedly informed by medical staff at Parkland Hospital that "the decision to remove the PICC line and cease antibiotic treatment for MRSA found [in] the joint was a mistake and represent[ed] an error in medical judgment and decision-making on the part of the ID consultant on service at the time."[1] On December 7, 2012, Tinnard sued Parkland, UT Southwestern, and "unknown Governmental Entities (Does 1–5)" under the Texas Tort Claims Act "to the extent applicable," seeking actual, statutory, and punitive damages. Tinnard also sought declaratory judgment regarding "whether the acknowledged misuse of the medical license or misuse of other licenses issued by the State of Texas, which are acknowledged property rights which cannot be taken away without due process of law, constitutes misuse [sic] tangible personal property such that negligence in the use thereof is actionable under the Texas Tort Claims Act."[2]

On January 1, 2013, Parkland filed a general denial and asserted several defenses, including sovereign immunity. UT Southwestern answered on January 20, 2013, also generally denying Tinnard's claims and asserting that it had "full sovereign immunity." On or about

---

[1] "'PICC' is an acronym for 'peripherally inserted central catheter' (PICC or PIC line), and is a form of intravenous access that can be used for a prolonged period of time (for example, for extended antibiotic therapy)." Parkland's Appellee Br. at 15 n.8. "MRSA" is an acronym for "Methicillin-resistant Staphylococcus aureus," which "is a bacteria that is resistant to many antibiotics." *Methicillin-resistant Staphylococcus aureus (MRSA) Infections*, CENTERS FOR DISEASE CONTROL AND PREVENTION, http://www.cdc.gov/mrsa/ (last visited Jan. 13, 2015). "ID" is an acronym for "infectious disease." Parkland's Appellee Br. at 15.

[2] In his petition, Tinnard also sought a declaration of "whether the representations of Parkland and Mr. Tinnard's reliance on the representations are in fact actionable under the Texas Tort Claims Act or other statutory waiver of governmental immunity," but in his appellate brief, Tinnard does not raise this issue or seek relief based on it.

March 7, 2013, Tinnard served each appellee with a document entitled "Notice of Filing of Dr. Mark A. Swancutt, MD Report," which stated Tinnard "files this Expert Report of Dr. Mark A. Swancutt." The "report" attached to the "Notice" was a copy of Dr. Mark A. Swancutt's "progress notes," authored on December 2, 2011. These "progress notes" were written by Dr. Swancutt after what he referred to in the notes as a "disclosure discussion" with Tinnard and Mrs. Tinnard, where other health care staff were present and where the circumstances of Tinnard's treatment were discussed. The "progress notes" were prepared prior to the lawsuit being filed.

UT Southwestern filed objections to the report and a motion to dismiss pursuant to section 74.351 of the Civil Practices and Remedies Code on March 25, 2013. On March 27, 2013, Parkland also filed objections to the report pursuant to section 74.351 and "in the alternative, motion to dismiss and for severance." Tinnard did not file a response to either motion or appear at the trial court's hearing on the motions. The trial court granted each appellee's motion to dismiss and, in an order dated May 15, 2013, dismissed Tinnard's claims with prejudice "for lack of an expert report as required by Chapter 74, Tex. Civ. Prac. & Rem. Code." Tinnard filed a motion for new trial, which was overruled by operation of law. TEX. R. CIV. P. 329b(c). This appeal followed.

## II. DISMISSAL UNDER THE TMLA

Tinnard contends the trial court erred when it dismissed his claims for failure to serve a medical expert's report pursuant to section 74.351 of the Civil Practices and Remedies Code because (1) whether sovereign immunity was waived under the Texas Tort Claims Act "is a preliminary declaration that must be made prior to any other act by the trial court," and (2) Tinnard filed a request for declaratory judgment, not a health care liability claim. The appellees both argue that Tinnard filed a health care liability claim, seeking monetary damages from a

governmental entity, so he was required to comply with both, the Texas Tort Claims Act and the TMLA. Alternatively, each appellee contends sovereign immunity has not been waived and bars Tinnard's claims.

### A. Standard of Review

"Generally, an appellate court reviews a trial judge's decision on a motion to dismiss a claim under section 74.351 of the Texas Civil Practice and Remedies Code for an abuse of discretion." *Baylor Med. Ctr. at Waxahachie v. Wallace*, 278 S.W.3d 552, 555 (Tex. App.— Dallas 2009, no pet.). "A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to guiding rules or principles." *Id.* "When reviewing matters committed to the trial court's discretion, an appellate court may not substitute its judgment for that of the trial court." *Cayton v. Moore*, 224 S.W.3d 440, 444 (Tex. App.—Dallas 2007, no pet.). "The nature of the claims the Legislature intended to include under the TMLA's umbrella is a matter of statutory construction, a legal question we review de novo." *Texas W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 177 (Tex. 2012).

### B. Sovereign Immunity Under the Texas Tort Claims Act

In issue one, Tinnard contends the trial court abused its discretion by dismissing his claims pursuant to the TMLA before deciding the "preliminary matter" of sovereign immunity. The appellees argue that Tinnard was required to plead a waiver of sovereign immunity and comply with the TMLA.

### 1. Applicable Law

"'Sovereign immunity protects the State from lawsuits for money damages.'" *City of El Paso v. Heinrich*, 284 S.W.3d 366, 369 (Tex. 2009) (quoting *Tex. Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 853 (Tex. 2002)). "Such lawsuits 'hamper governmental functions by requiring tax resources to be used for defending lawsuits and paying judgments

rather than using those resources for their intended purposes.'" *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008) (quoting *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 375 (Tex. 2006)).

"In Texas, a governmental unit is immune from tort liability unless the legislature has waived immunity." *Arnold v. Univ. of Tex. Sw. Med. Ctr. at Dallas*, 279 S.W.3d 464, 467 (Tex. App.—Dallas 2009, no pet.); *see also Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003). "In a suit against a governmental unit, the plaintiff must affirmatively demonstrate the court's jurisdiction by alleging a valid waiver of immunity." *Whitley*, 104 S.W.3d at 542. The Texas Tort Claims Act "provides a limited waiver of governmental immunity when 'use' of property is involved." *Id.* (citing TEX. CIV. PRAC. & REM. CODE §§ 101.001–.109).

The Declaratory Judgment Act is "a remedial statute designed 'to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations.'" *Heinrich*, 284 S.W.3d at 370 (quoting TEX. CIV. PRAC. & REM. CODE § 37.002(b)). It "does not enlarge a trial court's jurisdiction, and a litigant's request for declaratory relief does not alter a suit's underlying nature." *Id.*

"A core purpose of [the TMLA] was to identify and eliminate frivolous health care liability claims expeditiously, while preserving those of potential merit." *Samlowski v. Wooten*, 332 S.W.3d 404, 410 (Tex. 2011). Accordingly, the TMLA "entitles a defendant to dismissal of a health care liability claim if, within 120 days of the date suit was filed, he is not served with an expert report showing that the claim against him has merit." *Scoresby v. Santillan*, 346 S.W.3d 546, 549 (Tex. 2011) (citing TEX. CIV. PRAC. & REM. CODE § 74.351(b)); *see also id.* at 410–11.

–5–

## 2. Application of the Law to the Facts

Tinnard contends that because he sought a declaratory judgment regarding whether sovereign immunity was waived under the Texas Tort Claims Act, the trial court was required to make that determination "prior to any other act by the trial court." UT Southwestern contends "the underlying nature of [Tinnard's] claims is a suit for money damages for an alleged error in medical judgment," so Tinnard "was required to both properly plead a waiver of sovereign immunity, and to provide an adequate expert report pursuant to the [TMLA]." Parkland responds similarly, arguing that Tinnard was "required to fulfill the requirements of the Texas Tort Claims Act *and* of the [TMLA]." (emphasis in original).

Parkland and UT Southwestern each asserted sovereign immunity as a defense to Tinnard's lawsuit, but neither set for hearing their pleas to the jurisdiction asserting sovereign immunity. However, the appellees' motions to dismiss for failure to file an expert report under the TMLA were presented to the trial court. Tinnard did not appear for that hearing. We cannot conclude that appellees were required to first proceed on a sovereign immunity defense, rather than pursuing another defense to the lawsuit. *See Univ. of Tex. Med. Branch at Galveston v. Tatum*, 389 S.W.3d 457, 461 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (citing *Univ. of Tex. Med. Branch at Galveston v. Simmons*, No. 14-11-00215-CV, 2012 WL 19665, at *2 (Tex. App.—Houston [14th Dist.] Jan. 5, 2012, no pet.) (mem. op.)) ("When a claimant asserts a healthcare-liability claim against a governmental entity that is a healthcare provider, the claimant must comply with both the Medical Liability Act and the Texas Tort Claims Act."); *Shelton v. Univ. of Tex. Med. Branch at Galveston*, No. 14-07-00994-CV, 2009 WL 997480, at *4 (Tex. App.—Houston [14th Dist.] Apr. 14, 2009, pet. denied) (mem. op.) (citing *Univ. of Tex. Health Sci. Ctr. at Houston v. Gutierrez*, 237 S.W.3d 869, 874 (Tex. App.—Houston [1st Dist.] 2007,

pet. denied)) (stating same). Tinnard has cited no authority, and we have found none, supporting

his contention. Accordingly, we decide against Tinnard on his first issue.

### C. Health Care Liability Claim

Next, Tinnard asserts the trial court erred in dismissing his claims pursuant to the TMLA

because he "did not file suit for a health care liability claim." The appellees argue that Tinnard's

claims are health care liability claims, Tinnard was required to comply with the expert report

requirement in section 74.351, and he failed to do so. Tinnard does not contest the trial court's

finding that the "Notice of Filing of Expert Report" and the "progress note" by Dr. Swancutt "do

not constitute an 'expert report' as that term is defined in § 74.351(r)(6)."

### 1. Applicable Law

A health care liability claim has three elements:

> (1) the defendant is a health care provider or physician; (2) the claimant's cause of action is for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, health care, or safety or professional or administrative services directly related to health care; and (3) the defendant's alleged departure from accepted standards proximately caused the claimant's injury or death.

*Loaisiga v. Cerda*, 379 S.W.3d 248, 255 (Tex. 2012); *see also* TEX. CIV. PRAC. & REM. CODE

ANN. § 74.001(a)(13) (defining "health care liability claim"). A "health care provider" is "any

person, partnership, professional association, corporation, facility, or institution duly licensed,

certified, registered, or chartered by the State of Texas to provide health care." TEX. CIV. PRAC.

& REM. CODE ANN. § 74.001(a)(12)(A). A "claimant" is a person "seeking or who has sought

recovery of damages in a health care liability claim." *Id.* § 74.001(a)(2).

The TMLA "requires that a claimant bringing a health care liability claim against a

physician or health care provider serve an expert report on each party against whom a health care

liability claim is alleged." *Monson v. Allen Family First Clinic, P.A.*, 390 S.W.3d 598, 601 (Tex.

App.—Dallas 2012, no pet.) (citing TEX. CIV. PRAC. & REM. CODE § 74.351(b)). "A valid expert

report has three elements: it must fairly summarize the applicable standard of care; it must explain how a physician or health care provider failed to meet that standard; and it must establish the causal relationship between the failure and the harm alleged." *Certified EMS, Inc. v. Potts*, 392 S.W.3d 625, 630 (Tex. 2013) (citing TEX. CIV. PRAC. & REM. CODE § 74.351(r)(6)). "The expert-report requirement applies to a patient's claims as long as the claims fall within the statutory definition of 'health care liability claim.'" *Monson*, 390 S.W.3d at 601.

"In order to determine whether a claim is [a health care liability claim], we consider the underlying nature of the claim. Artful pleading cannot alter that nature." *Omaha Healthcare Ctr., LLC v. Johnson*, 344 S.W.3d 392, 394 (Tex. 2011) (citing *Yamada v. Friend*, 335 S.W.3d 192, 196 (Tex. 2010)). "[T]he TMLA creates a rebuttable presumption that a patient's claims against a physician or health care provider based on facts implicating the defendant's conduct during the patient's care, treatment, or confinement are [health care liability claims]." *Loaisiga*, 379 S.W.3d at 256. Importantly, "a litigant's request for declaratory relief does not alter a suit's underlying nature," *Heinrich*, 284 S.W.3d at 370–71, and "a claim based on one set of facts cannot be spliced or divided into both [a health care liability claim] and another type of claim," *Loaisiga*, 379 S.W.3d at 255. "If the act or omission that forms the basis of the complaint is an inseparable part of the rendition of health care services, or if it is based on a breach of the standard of care applicable to health care providers, then the claim is a health care liability claim." *Monson*, 390 S.W.3d at 601 (citing *Garland Cmty. Hosp. v. Rose*, 156 S.W.3d 541, 544 (Tex. 2004)); *see also Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 851 (Tex. 2005) (construing the predecessor statute, the Medical Liability and Insurance Improvement Act, previously codified at article 4590i of the Texas Revised Civil Statutes); *Williams*, 371 S.W.3d at 179 (applying *Diversicare*'s analysis to the TMLA). "We consider the alleged wrongful conduct and the duties allegedly breached. We also consider whether expert testimony is necessary to

show breach of an applicable standard of care." *Lee v. Boothe*, 235 S.W.3d 448, 452 (Tex. App.—Dallas 2007, pet. denied) (internal citations omitted); *see also Fudge v. Wall*, 308 S.W.3d 458, 463 (Tex. App.—Dallas 2010, no pet.).

## 2. Application of the Law to the Facts

Tinnard contends his claims are not health care liability claims because the "plaintiff's pleadings set the nature of the case," and he filed only "a claim under the Texas Tort Claims Act and for declaratory judgment." Parkland responds, "[w]hen a plaintiff seeks monetary relief in connection with medical care and an alleged breach of the standard of care, as [Tinnard] does here, his claims are health care liability claims" and "cannot be recast as claims for declaratory judgment." UT Southwestern also argues that Tinnard's claims "are health care liability claims within the meaning of the [TMLA], and are subject to the strict requirements of § 74.351(a)."

There is no dispute that Parkland and UT Southwestern are both "health care providers." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(12)(A). Tinnard claims he was injured by the allegedly wrongful decision to "cease antibiotic treatment for MRSA found [in] the joint." Because Tinnard asserts he was injured while receiving care or treatment from a health care provider, a rebuttable presumption arises that Tinnard's claim is a health care liability claim. *See Rio Grande Valley Vein Clinic, P.A. v. Guerrero*, 431 S.W.3d 64, 65 (Tex. 2014) (concluding this rebuttable presumption applied to a plaintiff's claim when she asserted she was injured while receiving laser hair removal care or treatment); *Monson*, 390 S.W.3d at 601.

Tinnard did not file a response to the appellees' motions to dismiss. In his brief on appeal, after acknowledging the applicable health care liability claim presumption, he says only the following regarding the presumption: "While these arguments and possible [health care liability claim] presumptions may come into play at some later date, the crux before this Court

and before the trial court is whether there is even potential liability against a governmental entity or whether the Texas Tort Claims Act precludes liability."

Tinnard's petition identifies the cause of his injury as "an error in medical judgment and decision-making." A determination of whether the decision to "cease antibiotic treatment" was "an error in medical judgment" and whether it caused Tinnard's injury requires expert testimony on the appropriate standard of care and whether that standard of care was breached. *See Buchanan v. O'Donnell*, 340 S.W.3d 805, 811 (Tex. App.—San Antonio 2011, no pet.) (concluding plaintiff's claim for negligence in treating a patient by improperly or unnecessarily prescribing her medications was a health care liability claim because "[e]xpert testimony would be required to establish the proper standard of care for prescribing medications"). Because medical expert testimony is required to prove or refute Tinnard's claims, he has not rebutted the presumption that his claim is a health care liability claim. *See Guerrero*, 431 S.W.3d at 66 (concluding plaintiff did not rebut this presumption because "expert health care testimony [was] necessary to prove or refute the merits of her claim"). Based on the foregoing, we conclude Tinnard's claims are "health care liability claims," as defined in the TMLA. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13); *Broxterman v. Carson*, 309 S.W.3d 154, 158 (Tex. App.—Dallas 2010, pet. denied) (concluding patient's various claims, including claims for medical malpractice, were "health care liability claims" because "the essence of each of [the patient's] claims [was] negligence in the rendition of health care services"); *Mike Norgaard, LPC v. Pingel*, 296 S.W.3d 284, 289 (Tex. App.—Fort Worth 2009, no pet.) (concluding patient's claims against a health care provider, alleging it "fail[ed] to timely, properly, safely, or adequately govern or supervise the quality of medical and health care services to and for [the patient]," were health care liability claims). The fact that Tinnard also filed a claim for declaratory relief does not alter the underlying nature of his lawsuit, and his claim cannot be

divided into both a health care liability claim and another type of claim. *See Loaisiga*, 379 S.W.3d at 255 ("[A] claim based on one set of facts cannot be spliced or divided into both [a health care liability claim] and another type of claim"); *Heinrich*, 284 S.W.3d at 370–71.

Tinnnard sought "actual and statutory and punitive damages" and claimed damages "in excess of 50,000" dollars. Accordingly, he is a "claimant" who brought a healthcare liability claim for damages. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(2). Tinnard was required to comply with the expert report requirement of the TMLA. *See id.* § 74.351(a); *Monson*, 390 S.W.3d at 601 ("The expert-report requirement applies to a patient's claims as long as the claims fall within the statutory definition of 'health care liability claim.'"). He does not contest the trial court's finding that the "Notice of Filing of Expert Report" and the "progress note" by Dr. Mark A. Swancutt "do not constitute an 'expert report' as that term is defined in § 74.351(r)(6)." We conclude the trial court did not abuse its discretion when it dismissed Tinnard's claims pursuant to section 74.351(b) of the Civil Practices and Remedies Code. *See id.* § 74.351(b).

## III. CONCLUSION

We affirm the trial court's order dismissing Tinnard's claims for failure to file an expert report pursuant to section 74.351(b) of the Civil Practices and Remedies Code.


/Douglas S. Lang/
————————————————
DOUGLAS S. LANG
131161F.P05                                 JUSTICE

–11–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ZENE TINNARD, Appellant

No. 05-13-01161-CV      V.

THE DALLAS COUNTY HOSPITAL
DISTRICT D/B/A PARKLAND HEALTH
& HOSPITAL SYSTEM, AND
UNIVERSITY OF TEXAS SOUTHWEST
AND UNKNOWN GOVERNMENTAL
ENTITIES (DOES 1-5), Appellee

On Appeal from the 101st Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-12-14290.
Opinion delivered by Justice Lang. Justices
Bridges and Evans participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

It is **ORDERED** that appellee THE DALLAS COUNTY HOSPITAL DISTRICT D/B/A
PARKLAND HEALTH & HOSPITAL SYSTEM, AND UNIVERSITY OF TEXAS
SOUTHWEST AND UNKNOWN GOVERNMENTAL ENTITIES (DOES 1-5) recover their
costs of this appeal from appellant ZENE TINNARD.

Judgment entered this 22nd day of January, 2015.