727 F.Supp. 265 (1989)
In re GRAND JURY 89-4 SUBPOENA DUCES TECUM dated August 2, 1989.
UNITED STATES of America
v.
JOHN DOE A89-118.
United States District Court, E.D. Virginia, Alexandria Division.
December 14, 1989.
*266 Mark Hulkower, Asst. U.S. Atty., Alexandria, Va., for plaintiff.
Stephen V. Wehner, Santarelli, Smith, Kraut & Carroccio, Washington, D.C., for defendant.

MEMORANDUM OPINION
ELLIS, District Judge.
This matter is before the Court on the government's Motion to Enforce a Grand Jury Subpoena duces tecum issued by a Grand Jury in the Eastern District of Virginia on August 2, 1989 (the "Subpoena"). The pertinent facts are easily stated. "John Doe" ("Doe"),[1] together with two other individuals, incorporated the "Corporation"[1] in the state of Utah in 1986. Thereafter, as president and chief operating officer of the Corporation, Doe traveled to the Eastern District of Virginia to negotiate a loan purportedly to, and on behalf of, the Corporation. As of June 1, 1988, the Corporation ceased to exist as a legal entity. More recently, evidence emerged suggesting that Doe may have made a series *267 of false representations to a lending institution in the course of the loan application process. Accordingly, the matter was referred to a federal Grand Jury sitting in the Eastern District of Virginia. Acting upon the government's suggestion, the Grand Jury issued the Subpoena.
Although not initially clear, the government has subsequently confirmed that the Subpoena is directed to Doe solely in his capacity as custodian of the Corporation's records. Further, a cover letter accompanying the Subpoena advised Doe that he could elect to produce the documents directly to an agent of the Federal Bureau of Investigation in lieu of making a personal appearance before the Grand Jury. Immediately prior to the Subpoena's return date, Doe retained new counsel who requested a continuance to allow him time to become familiar with the case. Thereafter, Doe, through counsel, exercised his Fifth Amendment privilege and accordingly, refused to produce any documents under the Subpoena. In response, the government made clear that the Grand Jury was not seeking Doe's testimony but only production of those corporate documents falling within the subject matter areas identified in the Subpoena.
To vindicate its position, the government filed the Motion to Enforce which is the subject of this Memorandum Opinion. Doe's Opposition states three grounds on which the Motion for Enforcement should be denied. They are:
(1) that the Subpoena is directed to Doe in his individual capacity and, thus, seeks to compel incriminating testimony in violation of his Fifth Amendment privilege;
(2) that, even if directed to Doe as corporate custodian, the motion to enforce should be denied because certain documents specified by the Subpoena are personal documents held by him in his individual, rather than corporate, capacity and, thus, deserve Fifth Amendment protection; and
(3) that, even if the Subpoena is deemed directed to Doe as corporate custodian, the Subpoena should not be enforced because the act of production itself might incriminate Doe given his leading role in the Corporation.
Analysis appropriately begins with recognition of certain settled principles. First, the presumption of regularity that attaches to grand jury proceedings applies with equal force to duly-issued subpoenas, with the result that the burden rests on the party resisting the subpoena to show that the information sought is privileged, or that there has been an abuse of the grand jury process. See In re United States Grand Jury Proceedings (Cid), 767 F.2d 1131, 1133 (5th Cir.1985); In re Special Grand Jury No. 81-1 (Harvey), 676 F.2d 1005, 1010, withdrawn on other grounds, 697 F.2d 112 (4th Cir.1982). Here, therefore, Doe bears the burden of establishing that the Fifth Amendment privilege applies and bars enforcement of the Subpoena.
Next, it has long been established that corporations and other collective entities have no Fifth Amendment privilege. See, e.g., Bellis v. United States, 417 U.S. 85, 93, 94 S.Ct. 2179, 2185, 40 L.Ed.2d 678 (1974) (partnership); United States v. White, 322 U.S. 694, 701, 64 S.Ct. 1248, 1252, 88 L.Ed. 1542 (1944) (labor union); Hale v. Henkel, 201 U.S. 43, 74, 26 S.Ct. 370, 378, 50 L.Ed. 652 (1906) (corporation). Consistent with this, it is also established that a custodian of corporate documents may not invoke the Fifth Amendment to avoid production of corporate documents, even though these documents may be personally incriminating. See, e.g., Braswell v. United States, 487 U.S. 99, 108 S.Ct. 2284, 2291, 101 L.Ed.2d 98 (1988); Wilson v. United States, 221 U.S. 361, 385, 31 S.Ct. 538, 546, 55 L.Ed. 771 (1911). But, at this point, the analysis becomes more complicated because the act of production may have "communicative aspects of its own, wholly aside from the contents of the papers produced." Fisher v. United States, 425 U.S. 391, 410, 96 S.Ct. 1569, 1581, 48 L.Ed.2d 39 (1976); see also United States v. Lang, 792 F.2d 1235, 1240 (4th Cir.), cert. denied, 479 U.S. 985, 107 S.Ct. 574, 93 L.Ed.2d 578 (1986). If the act of production itself might result in self-incrimination, *268 then a Fifth Amendment privilege would apply. See Fisher, 425 U.S. at 410, 96 S.Ct. at 1580-81. Communicative aspects of the act of production include establishment of (1) the document's existence, (2) its authenticity, and (3) the custodian's possession or control of it. Id. The question then becomes whether, in a particular context, the act of production implicates the privilege.[2] In Braswell, the Supreme Court addressed this precise issue. Speaking for a bare majority,[3] Chief Justice Rehnquist rejected a claim that the act of production doctrine always overrides the general principle that collective entities, including corporations, enjoy no Fifth Amendment privilege. 108 S.Ct. at 2288-90. In his view, a custodian holds documents "in a representative rather than a personal capacity" and his act of production "is not deemed a personal act, but rather an act of the corporation," which, of course, has no privilege. 108 S.Ct. at 2291. Significantly, however, the Court was careful to limit its holding to document production; it acknowledged that a custodian could not be compelled to give testimony in the absence of an appropriate grant of immunity. 108 S.Ct. at 2293 (citing Curcio v. United States, 354 U.S. 118, 123-24, 77 S.Ct. 1145, 1149-50, 1 L.Ed.2d 1225 (1957)). Equally significant was the Court's agreement with the government's concession that no evidentiary use of the act of production could be made against the custodian. 108 S.Ct. at 2295. Instead, only the corporation's act of production could be used against the individual. Id. In sum, Braswell seems to recognize that while the act of production doctrine does not always override the general principle requiring custodians to produce corporate documents, it may do so in some circumstances. The circumstances of each case must be examined to ensure that the act of production does not have self-incriminating communicative aspects wholly aside from the contents of the documents produced. In this connection, the Braswell Court expressly left open whether production could be compelled "when the custodian is able to establish, by showing for example that he is the sole employee and officer of the corporation, that the jury would inevitably conclude that he produced the records." 108 S.Ct. at 2295 n. 11. With these general principles as background, each of Doe's three contentions is now separately addressed.

A.
Doe, taking advantage of an unintended ambiguity in the subpoena, argues that it is directed to him in his personal capacity, seeking his testimony as well and should, therefore, be quashed. If this were so, Doe's position, in some respects, would likely be well taken.[4] But the government *269 asserts that this issue is not presented because, early on, it made clear to Doe's counsel that the subpoena was directed to Doe solely in his corporate custodial capacity and called only for the production of corporate, not personal documents. The government further represented to Doe's counsel that no grand jury appearance or testimony would be required; instead, the requested records could be delivered to a government agent. These representations were reaffirmed at the hearing. The question, then, is whether, as Doe insists, the government should be required to prepare and serve anew an unambiguous subpoena. In the circumstances, this would be an unnecessary formalism. The government seeks enforcement of the subpoena only as clarified and limited. Given this, there is no prejudice or unfairness to Doe and, hence, no reason to require the government to serve a new subpoena merely to clarify that it is directed to Doe in his corporate custodial capacity.
Doe argues that the clarification is unavailing because the Corporation has no document custodian. As Doe put it "[b]ecause the corporation no longer exists, it follows that [Doe] could not have been served as its agent or custodian of its records." But this position is clearly contrary to Supreme Court authority: dissolution of a corporation does not alter the corporate records custodian's inability to assert the Fifth Amendment privilege. Bellis v. United States, 417 U.S. 85, 96 n. 3, 94 S.Ct. 2179, 2187 n. 3, 40 L.Ed.2d 678 (1974). Moreover, the manifest fallacy in this position is that corporate documents do not lose their identity as such simply because the corporation ceases to exist. Corporations may go out of existence by merger, dissolution, or other change of form. But these changes do not miraculously operate to metamorphose the corporation's documents into personal documents. Were this not so, then persons seeking to shield corporate documents from grand jury review could succeed simply by resorting to the ploy of dissolving the corporation. Such a rule of law would be "an invitation to a game of hare and hounds; in which the witness must [produce documents] only if cornered at the end of the chase." United States v. Bryan, 339 U.S. 323, 331, 70 S.Ct. 724, 730, 94 L.Ed. 884 (1950) (Court upheld conviction for refusal to turn over subpoenaed documents to Congressional committee). In short, corporate documents cannot be immunized from a proper subpoena by the ploy of dissolving or ending the corporation; the documents are not thereby transformed into personal documents. Rather, they retain their essential identity as corporate documents and are subject to compelled production. Accordingly, this objection to enforcement of the Subpoena is overruled.

B.
Next, Doe contends that even as limited the subpoena should be quashed because the documents called for are actually his personally and not the Corporation's. Resolution of this contention requires first an identification of the legal standard by which to determine whether documents are the Corporation's and then the application of that standard to the facts presented. The proper source of the standard is state law. See Bellis v. United States, 417 U.S. 85, 98-99, 94 S.Ct. 2179, 2187-88, 40 L.Ed.2d 678 (1974) (whether documents are partnership property turns on state law). And it seems clear that in Virginia, as elsewhere, corporate documents are (i) those prepared by an employee, officer, director, representative or agent of the corporation in furtherance of her or his corporate duties and responsibilities, or (ii) those sent, received, used or maintained by an officer, director, employee, agent or representative of the corporation in the course of its business. See In *270 re Grand Jury Investigation, Special Grand Jury No. II, 600 F.Supp. 436, 438 (D.Md.1984). This standard must be applied, in the first instance, by Doe as custodian. If disputes arise in this regard, the burden is on Doe to show the application of the privilege to a document or to the act of producing it. See In re Grand Jury Subpoena Duces Tecum, 697 F.2d 277 (10th Cir.1983); Similarly, the burden is on Doe to establish that any responsive documents are held by him in a personal and not representative capacity. On the current record, Doe has not carried either burden. Accordingly, the Court overrules this objection to the enforcement of the Subpoena. In ordering enforcement, however, the Court leaves open the possibility that questions not previously anticipated may arise as to specific documents. Accordingly, if such questions arise, Doe may seek leave of Court to bring these questions to the Court's attention and, if necessary, to submit the documents in issue to the Court for in camera review.

C.
Finally, Doe contends that even as clarified and limited to corporate documents held in his representative capacity, the Subpoena should not be enforced because the act of production infringes on his Fifth Amendment privilege. In this regard, Doe argues that the circumstances at bar are precisely those Braswell left open for future resolution because a jury would inevitably conclude that Doe produced the documents. Braswell, 108 S.Ct. at 2295 n. 11.
This argument is unpersuasive. The instant facts are not precisely those the Braswell Court left open. Doe is not "the sole employee and officer" of the Corporation. Id. Instead, the Corporation apparently had three employees, Doe, his wife, and a third person, as well as two officers, Doe (president) and his wife (secretary). Even so, it is unclear whether this slim distinction is enough to avoid the jury "inevitably conclud[ing] that [Doe] produced the records." Id. In any event, the inquiry must go beyond this distinction. What matters ultimately is whether an incriminating testimonial act is being compelled by the government. The documents themselves are not compelled testimonial acts and are plainly not privileged. But the government is compelling their production and, therefore, the pertinent inquiry is whether, with respect to any specific document or category of documents, the act of production has any communicative aspects that may be incriminating to Doe even though the jury will not be told that he produced them  only that the corporation did so. In other words, it is a two step inquiry: (1) would a jury, told that the Corporation produced the documents, nonetheless inevitably conclude that it was Doe who had possession of the documents and produced them, and, if so, (2) would this give rise to any incriminating inferences concerning a document's (i) existence, (ii) authenticity, or (iii) its custody. To win the protection of the privilege, Doe must bear the burden of showing that both steps of the inquiry yield affirmative answers.
On the current record, Doe has not carried this burden. Even assuming the jury attributes production to Doe, no incriminating inference relating to the documents is apparent. Further, although no specific documents or categories of documents are before the Court, it seems unlikely that such incriminating inferences would arise. Consider, for example, the situation where the Corporation produces a document authored and signed by Doe. Attributing the act of production to Doe would seem to add nothing to the existence, authenticity, and possession issues. On the other hand, documents may exist as to which there is an issue concerning whether or when Doe saw or had custody of them. If this issue is relevant to guilt or innocence, then the act of production, assuming it is attributed to Doe, would constitute compelled self-incrimination.
In sum, on the current record, Doe has not demonstrated that the act of production, even if attributed to him, involves self-incrimination. Accordingly, the Court overrules this objection to enforcement of the Subpoena, but leaves open the possibility that Doe, given the principles announced here, may be able to carry his burden in *271 connection with specifically identified documents or categories of documents.

D.
The Motion to Enforce, therefore, is granted. But Doe has leave to reassert the privilege as to specific documents in accordance with principles enunciated in this Opinion. In the event Doe reasserts the privilege, a hearing in this matter will be conducted at 8:30 Thursday, December 21, 1989.
NOTES
[1] Because the Grand Jury investigation is still in progress, no actual names are used.
[2] This problem can be avoided if the government elects to confer "production immunity" on the custodian pursuant to 18 U.S.C. §§ 6002, 6003. See Braswell, 108 S.Ct. at 2294 (majority opinion), 2301 (Kennedy, J., dissenting).
[3] Justices White, Blackmun, Stevens, and O'Connor joined in the Rehnquist opinion.
[4] A subpoena issued to Doe in his personal capacity and calling for his testimony plainly runs afoul of the Fifth Amendment privilege. Similarly, the privilege would also trump a subpoena issued to Doe as the corporate document custodian but that called for his potentially incriminating testimony. See Braswell, 108 S.Ct. at 2293; Curcio v. United States, 354 U.S. 118, 123-24, 77 S.Ct. 1145, 1149-50, 1 L.Ed.2d 1225 (1957) ("A custodian ... undertakes the obligation to produce the books of which he is custodian.... But he cannot lawfully be compelled, in the absence of a grant of adequate immunity from prosecution, to condemn himself by his own oral testimony.") (emphasis in original). By clarifying that the Subpoena is issued to Doe in his representative capacity and that it calls only for the production of corporate documents, the government avoids these pitfalls.

Also, the limitation of the Subpoena to corporate documents eliminates any question concerning the application of the privilege to Doe's personal documents. Worth noting, however, is that contrary to arguments advanced by Doe, his private papers, since their creation was not compelled by the government, enjoy no constitutional privilege. See United States v. Doe, 465 U.S. 605, 618, 104 S.Ct. 1237, 1245, 79 L.Ed.2d 552 (1984) ("the Fifth Amendment provides absolutely no protection for the contents of private papers of any kind.") (O'Connor, J. concurring); Fisher v. United States, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976) (privilege does not protect documents voluntarily prepared); United States v. Fishman, 726 F.2d 125, 126-27 (4th Cir.1983) (contents of documents are not subject to Fifth Amendment privilege). Doe's reliance on Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886) for the contrary proposition is unavailing. That decision is no longer authoritative. See Doe, 465 U.S. at 618, 104 S.Ct. at 1245 ("our decision in Fisher v. United States ... sounded the death knell for Boyd") (O'Connor, J. concurring); see also, C. Whitebread, Criminal Procedure: An Analysis of Constitutional Cases and Concepts 279-80 (1980); Mosteller, Simplifying Subpoena Law: Taking the Fifth Amendment Seriously, 73 Va.L. Rev. 1, 58-59 (1987).