UNITED STATES of America,
Plaintiff–Appellee,

v.

Roy A. WUJKOWSKI,
Defendant–Appellant
(Two Cases).

UNITED STATES of America,
Plaintiff–Appellee,

v.

John T. STONE, Jr.,
Defendant–Appellant.

Nos. 90–3132, 90–3135 and 90–3146.

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 8, 1991.

Decided April 2, 1991.

Richard Murray, argued (Carmen A. Jacobs, Jr. and Christian D. Abel, on brief), Murray & Price, Washington, D.C., for defendants-appellants.

Lowell V. Sturgill, Jr., Civ. Div., U.S. Dept. of Justice, Washington, D.C., argued (Stuart M. Gerson, Asst. Atty. Gen., Anthony John Steinmeyer, Civ. Div., U.S. Dept. of Justice, Washington, D.C., and Henry E. Hudson, U.S. Atty., Alexandria, Va., on brief), for plaintiff-appellee.

Before WIDENER, SPROUSE and WILKINSON, Circuit Judges.

WILKINSON, Circuit Judge:

This case presents recurrent issues in Fifth Amendment jurisprudence: which individuals or entities are eligible to invoke the privilege against self-incrimination and what types of materials are protected by the privilege. The dispute over these issues arises from a classic confrontation between the subpoena power of a government agency and the asserted Fifth Amendment rights of those individuals targeted by the subpoena. Here, the Department of Energy, as part of an investigation into alleged corruption among its employees and contractors, subpoenaed documents from appellants who are officers of corporations doing business with the Department. Appellants resisted the subpoenas on the principal ground that the documents sought by the Department were personal and shielded by the privilege against self-incrimination. The district court rejected appellants' Fifth Amendment claims and ordered the subpoenaed documents to be relinquished to the government.

Appellants now argue that the district court should have been more thorough both in its examination of the documents and in its examination of the legal issues involved in the case. We agree and remand the case for further proceedings consistent with the directions set forth herein.

## I.

For several years the Department of Energy through its Inspector General has been investigating allegations that one of its contractors, Technology and Management Services, Inc. ("TMS"), gave gratuities to Department employees in return for favorable treatment on contracts and mischarged the Department on contracts. Appellants John Stone, Jr. and Roy Wujkowski are officers of TMS. In addition, Wujkowski is the owner of Ashford Associates, Inc. Ashford provided services to Department contractors and is now under investigation on charges of corruption similar to those leveled against TMS.

As part of the Department's investigation, it issued subpoenas duces tecum to Stone and Wujkowski. The subpoenas contained a similar demand to produce:

all original desk and pocket calendars, appointment books, planner schedules, and daily meeting logs maintained or kept on a personal and/or business basis for calendar years 1985, 1986, 1987, 1988, and for the first three quarters of 1989.

The subpoena directed to Wujkowski also demanded that he produce business records related to Ashford Associates and records related to a beach home he owned. In regard to the beach house, the subpoena sought a list of names and addresses of all people who had used the house from 1983 to September 1989 and any correspondence related to its use. The Department contended that Wujkowski had allowed its employees to use the house in return for preferential treatment for his business interests.

Wujkowski and Stone refused to comply with the subpoenas, asserting their Fifth Amendment rights against self-incrimination. The Department moved to enforce the subpoenas in district court. The court ordered Wujkowski and Stone to submit the pocket calendars and planner schedules sought in the subpoena for an *in camera* review to determine whether the materials were corporate or personal. They complied with this order. The Department then argued that the court should reconsider its order because new case law made an *in camera* review unnecessary.

On July 27, 1990, the court ruled summarily that such a review was unnecessary

and that the contents of the calendars and schedules were not protected by the privilege against self-incrimination. In addition, the court held that any business notations in these materials were corporate records and that the privilege does not protect the act of producing corporate records. The court also concluded that the act of producing any personal notations in these materials did not create any additional threat of self-incrimination beyond the unprivileged act of producing the corporate notations. The court apparently believed that the statement of these general propositions relieved it of the need to conduct any real examination of the documents at issue or to explain why the act of production of any materials which might be personal failed to implicate the protections of the privilege. As part of its judgment, the court allowed the Department to take possession of the materials originally submitted for *in camera* review. Similarly, the court ordered Wujkowski and Stone to relinquish any additional items called for by the common language of their subpoenas. They now appeal the court's judgment.

The court also ordered Wujkowski to produce the subpoenaed documents pertaining to Ashford Associates and to the beach house. Wujkowski refused to comply with the order and the court held him in contempt. He now appeals the court's order requiring him to turn over these documents.

These appeals have been consolidated for review. Wujkowski and Stone maintain that both the contents of the subpoenaed documents and the act of producing them are privileged. The Department argues primarily that nothing about the documents or the act of producing them is privileged and that, in any event, its regulatory interests diminish any Fifth Amendment privilege to which the appellants may otherwise be entitled. We shall address each argument in turn.

## II.

Two approaches have been advanced for determining whether a Fifth Amendment privilege can be claimed for a particular document. Fifth Amendment analysis initially focused on whether the contents of a subpoenaed item would be self-incriminating. *See Bellis v. United States*, 417 U.S. 85, 87, 94 S.Ct. 2179, 2182, 40 L.Ed.2d 678 (1974). More recently, the focus of the privilege inquiry has shifted to whether the act of production associated with relinquishing an item would be self-incriminating. *Fisher v. United States*, 425 U.S. 391, 410, 96 S.Ct. 1569, 1581, 48 L.Ed.2d 39 (1976).

■ The case law now makes plain that appellants' claim of a privilege broadly based on the contents of appointment books and on beach house records must be rejected. *See United States v. Mason*, 869 F.2d 414, 416 (8th Cir.1989); *In re Steinberg*, 837 F.2d 527, 530 (1st Cir.1988). "[A] person may not claim the Amendment's protections based upon the incrimination that may result from the contents or nature of the thing demanded." *Baltimore City Dep't of Social Serv. v. Bouknight*, 493 U.S. 549, 110 S.Ct. 900, 905, 107 L.Ed.2d 992 (1990). This is so because "when the government demands that an item be produced, 'the only thing compelled is the act of producing the [item].'" *Id.* (citing *Fisher*, 425 U.S. at 410 n. 11, 96 S.Ct. at 1581 n. 11). The district court was therefore correct to conclude on the facts of this case that the contents of appellants' documents could not support a claim of privilege.

■ Wujkowski and Stone also contend the court erred in concluding that they could not claim act of production privileges for the subpoenaed documents. It is well settled that an individual may claim that his act of producing his own materials implicates his Fifth Amendment rights. *Bouknight*, 110 S.Ct. at 905. In contrast, a collective entity such as a corporation has no Fifth Amendment rights and the corporation and its officers cannot resist the production of corporate records on self-incrimination grounds. *Braswell v. United States*, 487 U.S. 99, 108 S.Ct. 2284, 101 L.Ed.2d 98 (1988). "The official records and documents of the organization that are held by [its officers] in a representative

rather than in a personal capacity cannot be the subject of the personal privilege against selfincrimination, even though production of the papers might tend to incriminate them personally." *United States v. White,* 322 U.S. 694, 699, 64 S.Ct. 1248, 1251, 88 L.Ed. 1542 (1944).

The logic behind this rule is that records of a corporation belong to the corporation and that the holder of the records is simply a custodian who has assumed a duty to produce the records upon proper demand by the government. *Braswell,* 487 U.S. at 108–14, 108 S.Ct. at 2290–93. Accordingly, the act of production is ascribed to the corporation and not to the individual. *Id.* at 117–18, 108 S.Ct. at 2294–95. To be sure, a person does not forfeit his or her Fifth Amendment rights merely by accepting employment with a corporation; rather these rights are inapplicable when an employee holds the corporation's records in a representative capacity.

Thus, the crucial distinction for act of production purposes is between personal documents and corporate documents held by agents in a representative capacity. While in some cases it is quite easy to draw the necessary distinctions, in other cases it can be more difficult to determine whether a document is personal or corporate. *See In re Grand Jury Investigation,* 600 F.Supp. 436 (D.Md.1984).

### III.

Here, the district court concluded that "the business related notations in the appointment books or calendars are corporate records." And the court seems to have assumed that the beach house records were corporate also. We agree with appellants that the court should have conducted a more extensive inquiry into the documents themselves before reaching these conclusions.

### A.

■ Stone did acknowledge that there were business as well as personal notations in his appointment books and calendars. Yet given that an *in camera* review of the submitted materials was never conducted,

we have difficulty knowing on what basis the court concluded that Wujkowski's appointment books and calendars contained business notations. The Department suggests that we should simply presume that appointment books and planners will contain business notations. In our view, basing a decision on such a presumption is inappropriate when a constitutional privilege hangs in the balance. We cannot state categorically that such things as appointment books, day planners, and pocket calendars are intrinsically either corporate or personal in nature. The subpoena itself appears to confirm the difficulty of generic characterization by asking for documents held on a "personal and/or business basis." Even if there are business related notations in the appointment books and pocket planners, this does not mean that these materials are invariably unprivileged because the question remains whether the documents were held in a representative or personal capacity. *See In re Grand Jury Subpoena v. United States,* 657 F.2d 5 (2d Cir. 1981).

Based on these concerns, we believe the district court must conduct a more detailed inquiry into whether the pocket planners and appointment books in this case should be classified as corporate or personal. Of course, the burden will be on Wujkowski and Stone to prove the nature of the documents and the capacity in which they held them. *See, e.g., In re Grand Jury 89–4 Subpoena Duces Tecum,* 727 F.Supp. 265 (E.D.Va.1989). The Second Circuit's decision *In re Grand Jury Subpoena v. United States* provides a useful framework for the inquiry to be conducted on remand. The court there provided this nonexhaustive list of factors to aid in assessing whether a document is corporate or personal: who prepared the document, the nature of its contents, its purpose or use, who maintained possession and who had access to it, whether the corporation required its preparation, and whether its existence was necessary to or in furtherance of the conduct of the corporation's business. 657 F.2d at 8. *See also In Re Grand Jury Subpoena dated April 23, 1981,* 522 F.Supp. 977 (S.D.

N.Y.1981) (implementing the Second Circuit factors on remand). Carrying out this inquiry will insure that a few personal notations scrawled in an obviously corporate document will not convert the document into a personal one and at the same time insure that every writing made by a corporate executive is not transformed into a corporate document.

### B.

■ We voice similar concerns about the beach house records. A mere allegation by the Department that Wujkowski's house was used to further his business interests does not automatically transform the records of this ostensibly private residence into corporate documents. Here again, *In re Grand Jury Subpoena* is a useful aid in the inquiry into whether Wujkowski is entitled to claim an act of production privilege for the beach house materials. On remand, the court must examine these records for evidence establishing a link between the house and the corporations. For example, evidence of a financial link between the corporations and the house, such as corporate reimbursement of Wujkowski for expenses associated with the house, might help to establish that the materials pertaining to the house are corporate. Evidence of corporate hospitality or of the conduct of corporate business at the dwelling would also be relevant. If the home was used for these purposes, it makes the records pertaining to the house more like corporate documents held in a representative capacity.

■ If the district court determines that any of the items in dispute in this case should be classified as personal, Wujkowski or Stone should be provided the opportunity to show that his act of producing these items would entail testimonial self-incrimi-

nation. This now familiar inquiry centers on whether producing the items would testify to their authenticity, existence, or possession by the defendant. *Fisher*, 425 U.S. at 410, 96 S.Ct. at 1581. The Department, of course, could attempt to rebut appellant's claim by "producing evidence that possession, existence, and authentication were a 'foregone conclusion.'" *Doe v. United States*, 465 U.S. 605, 614 n. 13, 104 S.Ct. 1237, 1243 n. 13, 79 L.Ed.2d 552 (1984). "These questions perhaps do not lend themselves to categorical answers; their resolution may instead depend on the facts and circumstances of particular cases or classes thereof." *Fisher*, 425 U.S. at 410, 96 S.Ct. at 1581. We cannot tell at this preliminary stage whether the act of production would really be sufficiently testimonial and incriminatory to require protection. *Bouknight*, 110 S.Ct. at 905. Consequently, the district court should be the one to undertake such a fact dependent inquiry, if such an inquiry becomes necessary.[1]

### IV.

■ We recognize the Department's significant interest in detecting any wrongdoing among its employees or those who do business with them. We cannot accept, however, the Department's argument that it has a "compelling interest in investigating fraud" that "far outweighs the reduced interests of Wujkowski and Stone in asserting the Fifth Amendment's privilege." Its reliance on *Bouknight* here is unavailing. In *Bouknight*, the Court held that the ability of a child's custodian to resist production of that child on Fifth Amendment grounds was diminished because the child was "the legitimate object of the government's non-criminal regulatory powers." 110 S.Ct. at 906. In *Bouknight* itself, the Court noted that the custodian, by virtue of

---

**1.** The act of production inquiry with respect to the Ashford Associates documents is a somewhat different one. We face no problems of characterization with respect to these documents because Wujkowski acknowledges that he holds them as corporate records in a representative capacity. He nonetheless claims that he fits the one narrow circumstance in which an act of production privilege could conceivably be claimed with respect to corporate records. *Braswell* left open the question whether the cus-

todian could be compelled "to produce corporate records when the custodian is able to establish, by showing for example that he is the sole employee and officer of the corporation, that the jury would inevitably conclude that he produced the records." 487 U.S. at 118 n. 11, 108 S.Ct. at 2295 n. 11. Upon remand, we think the district court must address whether Wujkowski in fact falls within this area of open inquiry and, if so, how the question left open by *Braswell* should in its judgment be resolved.

being appointed by the state, assumed a duty to the state to produce the child for inspection. Here, unlike many of the cases underlying the holding in *Bouknight*, the government does not contend that appellants were required to maintain the documents it seeks or to submit them for inspection as conditions of doing business with the government.

Nor is the Department simply enforcing a non-criminal law regulatory regime akin to that in *Bouknight*. Any wrongdoing by the contractors, either in providing employees unlawful gratuities or in fraudulent billing practices, might well be the basis for criminal charges. Indeed, the Department would be remiss if it failed to perform its duty "to report expeditiously to the Attorney General" whenever it discovers possible criminal violations. Inspector General Act, 5 U.S.C.App. 3 § 4(d) (1988). The efforts undertaken in this case thus have the aura of a criminal investigation. The Department's regulatory interests, therefore, do not negate appellants' abilities to invoke the privilege. *See Marchetti v. United States*, 390 U.S. 39, 57, 88 S.Ct. 697, 707, 19 L.Ed.2d 889 (1968).

## V.

We repeat that the government has a substantial interest in pursuing white collar crime among its contractors, but the pursuit of such crime cannot be permitted to overwhelm constitutional protections. Granting appellants a fuller hearing in this case will protect their rights with little appreciable impact on the government's ability to investigate corruption. We express no view at this point as to whether the relevant documents are corporate or personal or whether the production of any documents found to be personal would implicate the Fifth Amendment privilege. We hold only that the district court must undertake a more careful examination of the documents in question and provide a basis for its findings.

REMANDED WITH DIRECTIONS.