Tracy Christopher, Justice
On April 3, 2018, relator Christopher J. Russo filed a petition for writ of mandamus in this court, his second relating to this discovery dispute. See Tex. Gov't Code Ann. § 22.221 (West Supp. 2017); see also Tex. R. App. P. 52. In the petition, Russo asks this court to compel the Honorable Caroline Baker, presiding judge of the 295th District Court of Harris County, to vacate her March 20, 2018 order, which compels Russo to produce certain documents for which Russo has asserted an act-of-production privilege under the Fifth Amendment of the United States Constitution.
The real parties-in-interest are Superior Energy Services, Inc., and Stabil Drill Specialties, LLC, and SESI, LLC (collectively, the "Superior Parties").
The Fifth Amendment privilege does not apply to the records of corporate entities. Russo has not shown that the documents for which he asserted the privilege are not records of corporate entities he allegedly owned or controlled. We therefore deny the petition for writ of mandamus.
FACTUAL AND PROCEDURAL BACKGROUND
The Superior Parties filed suit, alleging, among other things, that Russo and the other defendants conspired to defraud the Superior Parties of $72 million and other assets over several years. Specifically, the Superior Parties allege that Russo and Martin A. LeBlanc were the executive officers of Stabil Drill, a subsidiary of SESI, and that Russo and LeBlanc engaged in a complex scheme of self-dealing primarily by creating separate but interwoven corporate entities (which they owned or controlled directly or indirectly) to improperly invoice Stabil Drill for goods and services and to benefit themselves by being on both sides of various transactions. The Superior Parties allege that Russo was a member of, owned, and/or controlled several limited liability companies which he used to execute *786 his schemes to defraud the Superior Parties. These corporate entities include, among others, Triple RRR Investments, LLC, Gulf Coast Wireline, LLC, Maverick Rental Tools, LLC, Quest Holdings, LLC, Basket Specialties, LLC, Tri-Eagle NDT Services, LLC, Longhorn Bits LLC, Prime 337, LLC, Russo Energy LLC, Russo Exploration LLC, and Cole Joseph Russo Trust, LLC. In their petition, the Superior Parties assert claims against Russo and his corporate entities for breach of fiduciary duty, fraud, trade secret misappropriation, and civil conspiracy.
The Superior Parties served Russo and Russo Energy, LLC with several requests for production. Russo withheld some responsive documents, objecting to each request "on the ground that it requires production of documents in violation of Defendant's Fifth Amendment (U.S. Constitution) act-of-production privilege. See United States v. Hubbell , 530 U.S. 27, 120 S.Ct. 2037, 147 L.Ed.2d 24 (2000)."
On September 22, 2016, the Superior Parties filed a motion to compel production of the withheld documents. The trial judge heard the motion on October 3, 2016, and took the matter under advisement. On August 3, 2017, the trial judge issued an order requiring Russo to prepare a privilege log of all the documents Russo withheld and to deliver the documents to the court for an in camera review. Russo submitted a privilege log listing 2,277 documents.
At a hearing on October 20, 2017, the trial judge asked Russo to attempt to reduce the number of documents for which he was asserting his Fifth Amendment privilege. Russo later produced some of the documents he had withheld, submitted amended and supplemental privilege logs (listing a total of 1538 documents), and delivered the documents on the logs to the court for in camera review.
On February 12, 2018, the trial judge signed an order requiring Russo to produce all of the documents that Russo had listed on the logs.
On February 21, 2018, Russo filed a petition for writ of mandamus, asking our court to compel the trial judge to vacate her February 12, 2018 order.
On March 1, 2018, the trial judge vacated her February 12, 2018 order.
On March 20, 2018, the trial judge signed an order compelling Russo, within fourteen days, to produce "all emails (or portions of emails) identified on the Amended and Supplemental Privilege Logs that were generated by a third party." The order directs Russo to file additional briefing regarding whether the documents he withheld on Fifth Amendment grounds pose a real and substantial risk of incrimination to him and why the Superior Parties are not entitled to copies of the Amended and Supplemental privilege logs under Texas Rule of Civil Procedure 193.3.
Because the trial judge had vacated the February 12, 2018 order, we issued an opinion on April 2, 2018, dismissing as moot Russo's first petition for writ of mandamus.
In his second petition for writ of mandamus now before us, Russo argues that the March 20, 2018 order constitutes an abuse of discretion because in it the trial judge orders production of documents which Russo contends are protected by his Fifth Amendment act-of-production privilege.
MANDAMUS STANDARD
To obtain mandamus relief, a relator generally must show both that the trial court clearly abused its discretion and that the relator has no adequate remedy by appeal. In re Prudential Ins. Co. of Am. , 148 S.W.3d 124, 135-36 (Tex. 2004)
*787 (orig. proceeding). A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to analyze the law correctly or apply the law correctly to the facts. In re Cerberus Capital Mgmt. L.P. , 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam). The relator must establish that the trial court reasonably could have reached only one conclusion. Walker v. Packer , 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding).
A party will not have an adequate remedy by appeal when the appellate court would not be able to cure the trial court's discovery error. In re Christus Santa Rosa Health Sys. , 492 S.W.3d 276, 280 (Tex. 2016). "If the trial court issues an erroneous order requiring the production of privileged documents, the party claiming the privilege is left without an adequate appellate remedy." Id. "Mandamus is appropriate for constitutional protections like the privilege against self-incrimination that an appeal could not adequately protect." In re Speer , 965 S.W.2d 41, 45 (Tex. App.-Fort Worth 1998, orig. proceeding) (citing Tilton v. Marshall , 925 S.W.2d 672, 682 (Tex. 1996) ).
STANDARD OF REVIEW
A defendant has the right to assert his Fifth Amendment privilege to avoid civil discovery if he reasonably fears that the responses would tend to incriminate him. See Tex. Dept. of Pub. Safety Officers Ass'n v. Denton , 897 S.W.2d 757, 760 (Tex. 1995). "Before the judge may compel the witness to answer, [the judge] must be 'perfectly clear, from a careful consideration of all the circumstances in the case, that the witness is mistaken, and that the answer(s) cannot possibly have such tendency to incriminate.' " Ex Parte Butler , 522 S.W.2d 196, 198 (Tex. 1975) (quoting Hoffman v. United States , 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1951) ).
Whether a discovery privilege applies is a matter of statutory construction, which is a question of law reviewed de novo. See In re Christus Santa Rosa Health Sys. , 492 S.W.3d at 280. We review with limited deference the issue of whether a trial court properly has applied the law of privileges to the documents. See Keene Corp. v. Caldwell , 840 S.W.2d 715, 718 (Tex. App.-Houston [14th Dist.] 1992, no writ).
ANALYSIS
A. The Fifth Amendment act-of-production privilege does not protect records of entities.
The only privilege asserted by Russo was the Fifth Amendment of the United States Constitution act-of-production privilege, discussed in United States v. Hubbell , 530 U.S. 27, 120 S.Ct. 2037, 147 L.Ed.2d 24 (2000). A person may be required to produce specific documents even though the documents contain incriminating assertions of fact or belief because the creation of those documents was not compelled within the meaning of the privilege. Id. at 36, 120 S.Ct. 2037. However, the act of producing documents in response to a subpoena duces tecum may have a compelled testimonial aspect because the act of production itself may implicitly communicate statements of fact. Id. "By 'producing documents in compliance with a subpoena, the witness would admit that the papers existed, were in his possession or control, and were authentic.' " Id. "The privilege afforded not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a *788 link in the chain of evidence needed to prosecute the claimant for a federal crime." Id. at 37, 120 S.Ct. 2037 (quoting Hoffman v. United States , 341 U.S. 479, 486, 71 S.Ct. 814, 95 L.Ed. 1118 (1951) ).
However, it is well established that "artificial entities," such as corporations, are not protected by the Fifth Amendment. Braswell v. United States , 487 U.S. 99, 102, 108 S.Ct. 2284, 101 L.Ed.2d 98 (1988). Representatives of a collective entity act as agents, and the official records of the organization that are held by them in a representative rather than a personal capacity cannot be the subject of their personal privilege against self-incrimination, even though production of the papers might tend to incriminate them personally (known as the "collective entity rule"). Id. at 99-100, 107, 108 S.Ct. 2284. The "collective entity rule" applies regardless of the entity's size and regardless of whether the subpoena is addressed to the entity or to the individual in the individual's capacity as the records' custodian. Id. "Any claim of Fifth Amendment privilege asserted by the agent would be tantamount to a claim of privilege by the corporation, which possesses no such privilege." Id. at 100, 110, 108 S.Ct. 2284.[1] A corporate custodian may not resist a subpoena for corporate records on Fifth Amendment grounds, even though the act of production may incriminate the custodian. Id. at 108-113, 108 S.Ct. 2284. "An individual cannot rely upon the [Fifth Amendment] privilege to avoid producing the records of a collective entity which are in [the individual's] possession in a representative capacity, even if these records might incriminate [the individual] personally." Bellis v. United States , 417 U.S. 85, 88, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974). The "collective entity rule" applies even if the subpoena or document request is addressed to an individual who has custody of corporate records, rather than to the corporation.[2]
Corporate documents are (i) those prepared by an employee, officer, director, representative or agent of the corporation in furtherance of her or his corporate duties and responsibilities, or (ii) those sent, received, used or maintained by *789 an officer, director, employee, agent or representative of the corporation in the course of its business. See In re Grand Jury Investigation, Special Grand Jury No. II , 600 F.Supp. 436, 438 (D. Md. 1984) ; In re Grand Jury 89-4 Subpoena Duces Tecum , 727 F.Supp. 265, 269-70 (E.D. Va. 1989). The following nonexhaustive list of criteria is relevant to determining whether a document is corporate or personal in nature: who prepared the document; the nature of its contents; its purpose or use; who possessed it; who had access to it; whether the entity required its preparation; and whether its existence was necessary to or in furtherance of the entity's business. See In re Grand Jury Proceedings , 55 F.3d 1012, 1014 (5th Cir. 1995) ; Grand Jury Subpoena Duces Tecum Dated April 23, 1981 Witness v. United States , 657 F.2d 5, 8 (2d Cir. 1981) ; United States v. Wujkowski , 929 F.2d 981, 984 (4th Cir. 1991).
B. Russo has not shown that the withheld documents are not business entity records, for which there is no Fifth Amendment privilege.
The withheld documents consist almost entirely of emails either to or from Russo at a Yahoo email account. In its motion to compel, the Superior Parties correctly argued that Russo may not withhold emails in his custody that are records of his corporate entities. See e.g. , Bellis , 417 U.S. at 88, 94 S.Ct. 2179 ; In re Grand Jury Subpoena , 593 F.3d 155, 157-58 (2d Cir. 2010) (the custodian of corporate records, who acts as a representative of the corporation, cannot refuse to produce corporate records on Fifth Amendment grounds; this rule holds true regardless of whether the subpoena is directed to the corporation or to the custodian in the custodian's representative capacity).
The burden is on the party asserting a privilege from discovery to produce evidence concerning the applicability of the privilege. Peeples v. Fourth Supreme Judicial District , 701 S.W.2d 635, 635 (Tex. 1985) (orig. proceeding). "The party who seeks to limit discovery by asserting a privilege has the burden of proof." In re E.I. DuPont de Nemours & Co. , 136 S.W.3d 218, 223 (Tex. 2004) (orig. proceeding). It is relator's burden to establish the applicability of the Fifth Amendment privilege. Batson v. Rainey , 762 S.W.2d 717, 720 (Tex. App.-Houston [1st Dist.] 1988, no writ). A person asserting the Fifth Amendment privilege to the production of documents has the burden to prove that the documents are personal, rather than corporate. See Wujkowski , 929 F.2d at 984 ; In re Grand Jury 89-4 Subpoena Duces Tecum , 727 F.Supp. at 270 ; In re Grand Jury Investigation, Special Grand Jury No. II, Sept. Term, 1983 , 600 F.Supp. at 438.
In his briefing, Russo alleges that none of the emails he withheld are records of the entities he owned or controlled. In support of this allegation, Russo cites only the statement of his counsel at the hearing that Russo will be producing any corporate records that Russo has in his possession pertaining to Triple RR Investment, LLC or any of the other entities which he owns or controls. However, unsworn statements by counsel, such as this, are not evidence. See Daugherty v. Jacobs , 187 S.W.3d 607, 619 (Tex. App.-Houston [14th Dist.] 2006, no pet.) ; In re Butler , 987 S.W.2d 221, 225 (Tex. App.-Houston [14th Dist.] 1999, orig. proceeding).
Further, there is evidence that the withheld emails likely are records of an entity because they were sent or received by Russo, as an agent of an entity, in the course of the entity's business. See In re Grand Jury Investigation, Special Grand Jury No. II , 600 F.Supp. at 438. Many of the emails, which Russo initially withheld *790 under the Fifth Amendment but later produced, are emails to or from a Yahoo account that relate to the business of one or more of Russo's corporate entities. For example, in one email, Russo sends an invoice from his wholly owned entity, Gulf Coast Wireline, LLC, to obtain payment from a Stabil Drill vendor, Basket Specialties, LLC, also an entity that Russo allegedly owned. A second email shows that Russo used the Yahoo account to communicate with Stabil Drill vendor, E&M Supply Group, and to invoice this vendor for consulting services by Longhorn Bits, LLC, another entity that Russo allegedly owned. In a third email from the Yahoo account, Russo expresses his desire to include LeBlanc in "Pro" (short for "Procyon," another vendor of Stabil Drill that Russo allegedly owned). The Superior Parties allege in their petition that Russo and Chris Hart received direct kickbacks of over $500,000 from Procyon for its basket sales to Stabil Drill. Russo also sent an email from this account to attempt to convince a vendor to bill Stabil Drill for services that were not performed; Russo states in his email to the vendor's representative that "nobody outside of you and I would know anything about our agreement." Thus, it is clear that Russo used the Yahoo account to conduct the business of corporate entities which the Superior Parties allege Russo used to execute his fraudulent schemes.
Additionally, in the privilege logs, Russo states that each of the documents relate to either the "alleged kickback" or the "alleged unreported related party transactions." Russo acknowledges in his mandamus petition that the Superior Parties allege that "Russo and other co-defendants created several entities to engage in and profit from undisclosed related-party transactions from which they received kickbacks and other remuneration." The Superior Parties allege in their petition that several vendors of Stabil Drill paid kickbacks to Russo's entities, including Ragin Rentals, Longhorn Bits, Prime 337, and Gulf Coast Wireline, among others. The Superior Parties further allege that Russo's entities, Basket Specialties, LLC and Tri-Eagle NDT Services, LLC, misrepresented and concealed their "related party" status when transacting business with Stabil Drill to induce the company to enter into business with them. Because the "alleged kickbacks" and the "alleged unreported related party transactions" were paid to or done with entities that Russo allegedly owned or controlled, it reasonably may be inferred that the withheld documents constitute records of one of these entities.
Thus, there is evidence in the record that Russo used the Yahoo account to conduct business of his corporate entities and that the emails in this account are likely or may be corporate records. Russo had the burden to prove that each of the documents he withheld are personal and not a record of one of his corporate entities. See In re E.I. DuPont de Nemours & Co. , 136 S.W.3d at 223 ; Wujkowski , 929 F.2d at 984. Russo has not done so.[3]
CONCLUSION
"An individual cannot rely upon the [Fifth Amendment] privilege to avoid producing the records of a collective entity *791 which are in his possession in a representative capacity, even if these records might incriminate him personally." Bellis , 417 U.S. at 88, 94 S.Ct. 2179. Russo has not shown that the documents he withheld are not records of a corporate entity within his possession or that the Fifth Amendment act-of-production privilege applies to these documents. Accordingly, we deny Russo's petition for writ of mandamus and lift our partial stay of the March 20, 2018 order.

See also Super X Drugs of Tex., Inc. v. State , 505 S.W.2d 333, 337 (Tex. Civ. App.-Houston [14th Dist.] 1974, no writ) (a corporation has no Fifth Amendment right against self-incrimination; this is true regardless of whether the corporation is compelled to produce records or an officer of the corporation is testifying) (citing George Campbell Painting Corp. v. Reid , 392 U.S. 286, 88 S.Ct. 1978, 20 L.Ed.2d 1094 (1968) ).

"In Wilson v. United States , supra [221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771 (1911) ], the Court held that an officer of a corporation could not claim his privilege against compulsory self-incrimination to justify a refusal to produce the corporate books and records in response to a grand jury subpoena duces tecum directed to the corporation. A companion case, Dreier v. United States , 221 U.S. 394 [31 S.Ct. 550, 55 L.Ed. 784] (1911), held that the same result followed when the subpoena requiring production of the corporate books was directed to the individual corporate officer." Bellis , 417 U.S. at 89, 94 S.Ct. 2179. In United States v. Ali , PWG-13-3398, 2014 WL 5790996, at *8 (D. Md. Nov. 5, 2014), the court stated: "it is not relevant that the Summons, though seeking corporate records, is addressed to Ali personally. Dreier v. United States , 221 U.S. 394, 399 [31 S.Ct. 550, 55 L.Ed. 784] (1911) ("By virtue of the fact that they were the documents of the corporation in his custody, and not his private papers, he was under an obligation to produce them when called for by proper process")." The "collective entity rule" applies regardless of whether the subpoena was issued to the entity's custodian of records or to a specific individual within the entity. In re Custodian of Records of Variety Distrib., Inc. , 927 F.2d 244, 247 (6th Cir. 1991) (citing Braswell and noting that in Braswell , the subpoena was issued to the defendant as the president of two corporations).

That the trial judge may not have granted the motion to compel on this ground is of no consequence. "Because a trial court cannot abuse its discretion if it reaches the right result for the wrong reason, we must uphold the order on any grounds supported by the record before the trial court." In re Vogel , 261 S.W.3d 917, 920 (Tex. App.-Houston [14th Dist.] 2008, orig. proceeding).