**Petition for Writ of Mandamus Conditionally Granted and Memorandum Opinion filed April 9, 2024.**



In The

# Fourteenth Court of Appeals

### NO. 14-23-00834-CV

### IN RE BRITTNI SILVA, Relator

**ORIGINAL PROCEEDING**
**WRIT OF MANDAMUS**
**56th District Court**
**Galveston County, Texas**
**Trial Court Cause No. 23-CV-0375**

## MEMORANDUM OPINION

On November 2, 2023, relator Brittni Silva filed a petition for writ of mandamus in this Court. *See* Tex. Gov't Code Ann. § 22.221; *see also* Tex. R. App. P. 52. In the petition, relator asks this Court to compel the Honorable Lonnie Cox, presiding judge of the 56th District Court of Galveston County, to vacate his order signed October 17, 2023 granting a motion to compel relator's compliance with a third-party subpoena requesting a variety of material. For the reasons discussed below, we conditionally grant the petition.

## BACKGROUND

The underlying trial court proceeding is a civil lawsuit filed by Marcus Silva against Jackie Noyola, Amy Carpenter, and Aracely Garcia. Essentially, the lawsuit alleges that the three of them assisted relator, who was Marcus Silva's spouse during the alleged events underlying the lawsuit but subsequently divorced him, in obtaining an abortion by helping her obtain medication to facilitate an abortion, thus allegedly wronging Marcus Silva. Relator herself is not a party to the trial court proceeding, and as near as can be determined, her filings do not concede that she was pregnant or obtained an abortion at any time relevant to Marcus Silva's claims in the trial court proceeding. On June 20, 2023, Marcus Silva served a notice of subpoena on relator. The subpoena contained the following seven requests for production:

> Request No. 1: A reproduction of all communications you have had with defendant Jackie Noyola concerning abortion, abortion-inducing drugs, your pregnancy of July 2022, and the abortion that you obtained in July of 2022.
>
> Request No. 2: A reproduction of all communications you have had with defendant Amy Carpenter Concerning abortion, abortion-inducing drugs, your pregnancy of July 2022, and the abortion that you obtained in July of 2022.
>
> Request No. 3: A reproduction of all communications you have had with any person concerning your efforts to acquire, possess, or distribute abortion-inducing drugs.
>
> Request No. 4: A reproduction of all communications you have had with any person concerning your pregnancy of July 2022.
> .

2

Request No. 5: A reproduction of all communications you have had with any person concerning the abortion that you obtained in July of 2022.

Request No. 6: Any records in your possession concerning the acquisition, possession, or distribution of abortion-inducting drugs.

Request [] No. 7: All abortion-inducing drugs in your possession, custody, or control.

On July 31, 2023, relator provided Marcus Silva with objections and responses to his subpoena. Relator did not provide any documents or items that were responsive to Marcus Silva's discovery requests and raised a variety of reasons why she was not doing so. For purposes of this proceeding, the most relevant objections contended that compelling production responsive to the requests would violate the United States Constitution and Texas Constitution, particularly the federal Fifth and Fourteenth Amendments. The objections further noted that Marcus Silva's lawsuit claimed relator violated numerous state and federal criminal laws in association with the wrongdoing he was alleging occurred, and although relator denied she had committed any criminal acts, relator was exercising constitutional rights against being compelled to produce documents that would be used to prove commission of allegedly criminal acts.

On September 18, 2023, Marcus Silva filed a motion to compel relator's compliance with the subpoena. Relator filed her response to the motion on October 3, 2023. That response reiterated her contention that the Fifth Amendment protected her from producing items in response to Marcus Silva's subpoena, and it highlighted three sets of criminal statutes that Marcus Silva's petition claimed relator herself had violated: (1) 18 U.S.C. §§ 1461 and 1462, provisions of the federal

Comstock Act that prohibit arranging for the transportation of abortion pills in interstate commerce, as well as receiving or arranging to receive those pills through the mail or by using an express company, common carrier, or interactive computer service; (2) articles 4512.1 through 4512.6 of Texas's revised civil statutes, which contain a myriad of prohibitions on providing abortion; and (3) section 171.003 of the Texas Health and Safety Code, which states that "[a]n abortion may be performed only by a physician licensed to practice medicine in this state." *See* Tex. Health & Safety Code Ann. § 171.003.

On October 17, 2023, the trial court signed an order granting Marcus Silva's motion to compel relator's compliance with her subpoena, which required relator to comply with the subpoena and produce the subpoenaed materials within 30 days. Appellant filed her mandamus petition on November 2, 2023, as well as a motion to stay the trial court's order while this court resolved the mandamus petition. On November 6, 2023, this court granted relator's motion and stayed the trial court's order while requesting a response to the petition from Marcus Silva. He has filed his response, and relator has filed a reply in support of her petition.

**MANDAMUS STANDARD OF REVIEW**

To be entitled to a writ of mandamus, the relator must show that (1) the trial court clearly abused its discretion, and (2) the relator lacks an adequate remedy by appeal. *In re Kappmeyer*, 668 S.W.3d 651, 654 (Tex. 2023) (orig. proceeding). When a trial court takes action because it makes an error of law, that action is inherently an abuse of discretion. *See In re Rudolph Automotive, LLC*, 674 S.W.3d 289, 302 (Tex. 2023) (orig. proceeding). An appellate remedy is inadequate when parties are in danger of permanently losing substantial rights, such as when an

4

appellate court would not be able to cure the alleged error. *See Elec. Reliability Council of Tex., Inc. v. Panda Power Generation Infrastructure Fund, LLC*, 619 S.W.3d 628, 641 (Tex. 2021).

## ANALYSIS

The first prong of the mandamus analysis is the focus of the parties' arguments. Essentially, this prong centers on whether the Fifth Amendment provides relator a privilege against providing the items requested by Marcus Silva's subpoena.

The Fifth Amendment of the United States Constitution, in relevant part, states that "No person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. Although the Fifth Amendment only directly applies to the federal government, it applies to state governments through the Due Process Clause of the United States Constitution's Fourteenth Amendment. *Malloy v. Hogan*, 378 U.S. 1, 6 (1964). Moreover, the Fifth Amendment's self-incrimination protections encompass not just the events in criminal proceedings, but also civil proceedings like the instant trial court proceeding. *See Kastigar v. United States*, 406 U.S. 441, 444 (1972). Those protections create a privilege "to avoid civil discovery if [the respondent] reasonably fear[s] the answers would tend to incriminate [them]." *Tex. Dep't of Pub. Safety Officers Ass'n v. Denton*, 897 S.W.2d 757, 760 (Tex. 1995) (citation omitted). The Fifth Amendment's privilege against self-incrimination "not only extends to answers that would in themselves support a conviction under a . . . statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a . . . crime." *United States v. Hubbell*, 530 U.S. 27, 38 (2000) (quoting *Hoffman v.*

5

*United States*, 341 U.S. 479, 486 (1951)). The Fifth Amendment's protection encompasses an act-of-production privilege, applying when the act of producing documents might itself communicate statements of fact. *In re Russo*, 550 S.W.3d 782, 787 (Tex. App.—Houston [14th Dist.] 2018, orig. proceeding) (citing *Hubbell*, 530 U.S. at 36).

The parties disagree about whether relator has a reasonable fear of prosecution under the statutes highlighted by her petition. We conclude that, at minimum, relator has a reasonable fear of prosecution under 18 U.S.C. §§ 1461 and 1462.[1]

Section 1461 declares a variety of items to be "nonmailable matter," most relevantly here "[e]very article, instrument, substance, drug, medicine, or thing which is advertised or described in a manner calculated to lead another to use or apply it for producing abortion." 18 U.S.C. § 1461. The statute states that such items "shall not be conveyed in the mails or delivered from any post office or by any letter carrier," and it further declares that "[w]hoever knowingly uses the mails for the mailing, carriage in the mails, or delivery of anything declared by [that statute] to be nonmailable, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, or knowingly takes any such thing from the mails for the purpose of circulating or disposing thereof, or of aiding in the circulation or disposition thereof, shall be fined under this title or imprisoned not more than five years, or both, for the first such offense, and shall be fined under this title or imprisoned not more than ten years, or both, for each such offense thereafter." *Id.*

---

[1] In reaching this conclusion, we find it unnecessary to resolve whether relator has a reasonable fear of prosecution under any of the other statutes her petition references.

Relatedly, section 1462 declares that "[w]however . . . knowingly uses any express company or other common carrier or interactive computer service . . . for carriage in interstate or foreign commerce . . . any drug, medicine, article, or thing designed, adapted, or intended for producing abortion . . . [s]hall be fined under this title or imprisoned not more than five years, or both," with elevated penalties for repeated offenses. 18 U.S.C. § 1462. That statute penalizes "[w]however knowingly takes or receives, from such express company or other common carrier or interactive computer service . . . any matter or thing the carriage or importation of which [the statute] made unlawful." *Id.*

We will not belabor the obvious to show how the acts alleged by Marcus Silva in support of his claims, centering on the alleged use of abortion-facilitating medication, implicate the text of sections 1461 and 1462; they plainly do. But Marcus Silva has two arguments for why Fifth Amendment protections do not apply here. First, he contends that, at least to the extent that relator's answers would not demonstrate she used the mails, an express company, or another means encompassed by both statutes to obtain abortion-facilitating mediation, those documents cannot incriminate her and thus are not encompassed by the Fifth Amendment. We disagree. Even if relator solely produced evidence showing that she received abortion-facilitating medication without any indication of how she received them, it would still furnish a link in the chain to prosecute her for violations of either statute upon a separately obtained showing of evidence regarding how she received them. *Cf. In re Charles*, No. 01-18-01112-CV, 2019 WL 2621749, at *3–4 (Tex. App.—Houston [1st Dist.] June 27, 2019, orig. proceeding) (vacating an order that compelled a relator in a civil proceeding to produce information from his phone on the day of a fatal accident despite his potential prosecution for intoxication

7

manslaughter due to that accident, as "[i]t is not difficult to envision that information from relator's phone could include . . . details of the plans for the evening that would provide the State with a link in the chain of evidence needed to prosecute [him]").

Second, Marcus Silva points to indications that the Comstock Act has not been enforced for many years, as well as an interpretation of the Comstock Act from the current presidential administration that it is not enforceable, to assert that there is no reasonable fear of prosecution. But the Fifth Amendment's self-incrimination protections are not a function of prosecutors' apparent willingness to prosecute, but rather whether answers purportedly protected by the amendment are themselves incriminating. *Cf. Hoffman v. United States*, 341 U.S. 479, 488 (1951) (rejecting a trial court's compelling of discovery for a grand jury when it was not "perfectly clear, from a careful consideration of all the circumstances in the case, that . . . the answer(s) cannot possibly have such tendency to incriminate") (internal quotation marks and emphases omitted). Moreover, as the underlying alleged conduct fits the letter of the Comstock Act, we do not find it decisive that past and current prosecutors have not prosecuted and do not prosecute under the Act; there is no guaranteeing what future prosecutors will do. *Compare Poe v. Ullman*, 367 U.S. 497, 508 (1961) (declining to address the constitutionality of a state Comstock Act that, partly based on a lack of prosecution, was described as "harmless, empty shadows"), *with Griswold v. Connecticut*, 381 U.S. 479, 480, 485 (1965) (addressing on the merits the constitutionality of the same state Comstock Act following the prosecution of appellants who were arrested around five months after *Poe* was decided).[2]

---

[2] It appears that appellate counsel for Marcus Silva has previously acknowledged the prospect that the Comstock Act may be enforced in the future. *See* Lisa Lerer & Elizabeth Dias, Trump Allies

8

Separate from his arguments focused on the Comstock Act, Marcus Silva also asserts relator has failed to show that the items or their production will either support a criminal conviction or furnish a link in the chain of evidence needed to prosecute relator for a crime.[3] But consistent with our discussion specific to the Comstock Act, we conclude that all of Marcus Silva's discovery requests, which specifically request items relating to any of abortion, abortion-facilitating medication, or pregnancy, themselves facially request evidence that could, at least, furnish a link in the chain of evidence needed to prosecute relator for a crime, even by simply being produced. A useful parallel to this case can be found in *In re Nichol*, which was resolved by the El Paso Court of Appeals. 602 S.W.3d 595 (Tex. App.—El Paso 2019, orig. proceeding). That mandamus proceeding, which arose out of a lawsuit precipitated by a car crash allegedly caused by an intoxicated defendant, centered on the following objected-to interrogatory propounded to the defendant, which he contended had a risk of incrimination: "State where you had been just prior to the wreck, where you were going, and the purpose of the trip." *Id.* at 599. Although the defendant ostensibly (in the plaintiffs' eyes) did not provide an adequate explanation regarding the interrogatory's incriminatory impact, the court of appeals found such a risk apparent in the interrogatory itself in the context of criminal

Plan New Sweeping Abortion Restrictions, N.Y. Times (Feb. 17, 2024), https://www.nytimes.com/2024/02/17/us/politics/trump-allies-abortion-restrictions.html.

[3] As part of his arguments, Marcus Silva's brief also appears to contend that appellee has failed to show that withheld production is testimonial, rather than non-testimonial, in nature. Appellee's argument in this regard comprises little else beyond a section heading and a conclusion, unsupported by any citations, that relator "has failed to carry her burden of proof on this issue as well." Insofar as Marcus Silva is attempting to make this argument, we reject it due to inadequate briefing. *Cf. Mike Norgaard, LPC v. Pingel*, 296 S.W.3d 284, 290 (Tex. App.—Fort Worth 2009, no pet.) (overruling an appellee's argument regarding the ostensible unconstitutionality of a statute as waived because the appellee "fail[ed] to make any argument as to why th[e] statute is unconstitutional and cite[d] no authority in support").

charges appellant had contemporaneously been facing. *Id.* at 603–04. We similarly find relator privileged against providing responsive items for all seven of Marcus Silva's discovery requests, in the context of allegations that, on their face, relator violated the letter of the Comstock Act. Even simply by producing such evidence, relator would be constructing a chain of evidence that could link to her abortion-related prosecution. *See In re Charles*, No. 01-18-01112-CV, 2019 WL 2621749, at *3–4.

Marcus Silva finally contends that relator must make a document-by-document or item-by-item showing that the Fifth Amendment's self-incrimination privilege applies pursuant to Texas Rule of Civil Procedure 193.3, and further give the district court an opportunity to examine disputed documents and items in camera, in order to successfully claim the privilege. We disagree. Relator has shown that simply producing responsive documents or other items, or even acknowledging their existence, would itself create a risk of prosecution.[4] Under these circumstances, we do not see Rule 193.3 as requiring that relator paradoxically incriminate herself in order to be protected from self-incrimination. *See Russo*, 550 S.W.3d at 787 (acknowledging tacitly that the Fifth Amendment protects against producing incriminating documents that would, among other things, communicate the statement of fact that the documents existed). Consequently, we conclude the trial court clearly abused its discretion by granting Marcus Silva's motion to compel relator's compliance with her subpoena.

We similarly conclude that relator lacks an adequate remedy by appeal regarding the trial court's error. "Mandamus is appropriate for constitutional

---

[4] In making this observation, we do not draw any conclusions about whether any responsive documents or other items exist here.

protections like the privilege against self-incrimination that an appeal could not adequately protect." *Id.* (quoting *In re Speer*, 965 S.W.2d 41, 45 (Tex. App.—Fort Worth 1998, orig. proceeding). As the trial court's error imperils relator's Fifth Amendment self-incrimination privileges, mandamus is appropriate here.

## CONCLUSION

As relator's petition for writ of mandamus has merit, we conditionally grant the petition and direct the trial court to enter an order which vacates its October 17, 2023 order granting Marcus Silva's motion to compel relator's compliance with her subpoena. We are confident the trial court will act in accordance with this opinion and the writ will issue only if the court fails to comply.

PER CURIAM

Panel consists of Justices Hassan, Poissant, and Wilson.